69 311
73 535

R. Howe et al. *v.* Ada P. Kerr et al.

1. Code 1880, § 1300.　*Debtor transacting business without sign.　Silent partner.*

Under § 1300, code 1880, where one transacts business in his own name, without a sign at the place disclosing that another has any interest therein, all the property used in the business is liable for his debts; and this, although such other is interested in the business as a silent partner, and personally assists in carrying on the business, ostensibly as clerk.

2. Same.　*Sale by person transacting business.　Individual debts.*

Since the property so used or acquired in the business, though owned by the firm, may be subjected to the debts of the person thus transacting business in his own name, he may sell it in payment of his individual debts, without the consent of the silent partner.

From the chancery court of Clay county.
Hon. Baxter McFarland, Chancellor.

In the spring of 1889, J. J. Kerr borrowed of his mother, Ada P. Kerr, $950, and with that amount, and upon the joint note of himself and mother for $800, he bought of B. Y. Rhodes, administrator of the estate of G. W. Taylor, a saloon business. He obtained the license to carry on the business in his own name, and about the time of beginning, took into partnership H. A. Montgomery. It was understood that the business should be transacted in the name of the said J. J. Kerr. The agreement between him and Montgomery was in writing, as follows:

"This is to certify that I have this day associated myself with J. J. Kerr in the saloon business, as an equal partner with him, and do agree that said business be conducted under his name and management, as I am not on the petition. I am to remain silent, but am to devote my time and work to the interest of said business.　　　　　H. A. Montgomery."

This was about the first of March, 1889. Montgomery acted as salesman, and was in the saloon every day from early in the morning until nine or ten o'clock at night, ostensibly as clerk. Besides his services, he put into the business $838 in money. There was testimony tending to show that it was known to commercial agencies that he was a partner, and that two of the complainants knew that he was such at the time of extending credit to the firm.

On August 31, 1889, Kerr, being unable to pay the debt to his mother and the $800 note to Rhodes, administrator, made a joint sale to them of all the supplies and fixtures of the business. This sale was made at night, and was without the knowledge or consent of Montgomery. A few days thereafter Montgomery sued out an attachment against said J. J. Kerr for the sum of $838. This was followed by attachments at the suit of Robert Howe, I. N. Sperry and S. Lehman & Son, creditors of said firm. On August 2, 1890, after Montgomery had dismissed his attachment, he and the plaintiffs in the other attachments joined in a bill against the said J.

J. Kerr and Ada P. Kerr and B. Y. Rhodes to set aside the sale as fraudulent, and seeking to have the property applied to the payment of their debts. This bill was answered by the defendants, Ada P. Kerr and B. Y. Rhodes, and they afterwards each filed a cross-bill, and testimony was taken at length. It seems to be conceded that the debts to these parties were the individual debts of the said J. J. Kerr. The stock and fixtures so sold by Kerr were in the possession of Rhodes when the attachments were levied, it being agreed by the terms of the sale that Rhodes was to be first paid out of the proceeds of the property, and any balance was to be applied to the debt of said Ada P. Kerr. The value of the property did not equal the sum of the two debts. A decree was entered in favor of defendants, dismissing the bill, from which the complainants, R. Howe, S. Lehman & Son and I. N. Sperry, appealed. The opinion contains a further statement of the case.

In the court below, the contention seems to have been that, as Montgomery was a silent partner, and that as the purchasers, Rhodes and Mrs. Kerr, had no knowledge of the partnership, they would be protected by their purchase from the said J. J. Kerr, in whose name the business was transacted; and, on behalf of complainants, it was contended that Kerr had no right to appropriate the firm property to his individual debts without the consent of his partner, Montgomery. These questions are discussed by counsel in their briefs, but, as the case is made to turn alone upon the effect of § 1300 of the code of 1880, it is not necessary to give the arguments and the numerous authorities cited.

Section 1300 of the code of 1880, provides as follows: "If any person shall transact business as a trader, or otherwise, with the addition of the words, 'agent,' 'factor,' 'and company,' or '& co.,' or like words, and fail to disclose the name of his principal or partner by a sign . . . , or if any person shall transact business in his own name without such addition, all the property . . . used or acquired in such

business shall, as to the creditors of any such person, be liable for his debts."

*Clifton & Eckford* and *J. J. McClellan*, for appellants.

*R. C. Beckett*, for appellee, Rhodes.

*Beall & Pope*, for appellee, Ada P. Kerr.

COOPER, J., delivered the opinion of the court.

The uncontradicted evidence is that Kerr transacted the business in which he was engaged, in his own name, and that no sign was displayed at the place, disclosing that Montgomery had any interest therein; and that the property in controversy was "used and acquired" in that business. Under these circumstances, such property is, by express provision of the statute, liable for the debts of the person so transacting the business, and to be "in all respects treated, in favor of his creditors, as his property."

There is no doubt that Kerr was indebted to his mother and Rhodes in sums equal to the full value of the property sold to them. The real contention of appellants is that it was not competent for them to accept the partnership assets in payment of their demands against J. J. Kerr individually. But the statute declares that, as to creditors, the property is to be treated as the property of Kerr. They might have subjected it to their demands by proceeding at law to judgment and execution, and what the law would have done it was permissible for the parties to do.

*Affirmed.*