## COLUMBUS BUGGY CO. *v.* TURLEY & PARKER.

1. FRAUDULENT CONVEYANCE. *Insolvent debtor. Sale to pay debt. Code 1892, § 4234.*

   One carrying on the business of a livery and sale stable in his own name, under a sign bearing his name, with the addition of the word "proprietor," may, although insolvent, sell in good faith the property employed in such business to a creditor in satisfaction of his debt, since he only makes thereby such application of the property as the creditor, under § 4234, code 1892 (§ 1300, Code 1880), might have enforced by law. *Howe* v. *Kerr*, 69 Miss., 311, cited.

2. SALE. *Personal property. Reservation of title. Right to resell in vendee.*

   A vendee of goods under a contract that reserves title in the vendor until payment is made, but also by its terms confers a right upon the vendee to resell the same, has the power of disposition in respect thereto, and a creditor of the vendee who purchases the goods in satisfaction of his indebtedness, without notice of the vendor's claim, acquires title to the same.

FROM the circuit court of Adams county.

HON. W. P. CASSEDY, Judge.

Replevin by appellant against appellees to recover certain vehicles, of which it claimed ownership. The contract upon which the plaintiff relied as showing a reservation of title in itself was in the form of an order for goods, as follows:

"NATCHEZ, MISS., April 7, 1894.

"*Columbus Buggy Co., Columbus, Ohio:*

"Please ship to J. M. Smitha, the following goods at once, at the prices herein specified, and for which we agree to give our note, on receipt of invoice, payable as per terms stated below.   This order not subject to countermand.   .   .   .

"All goods on hand, and the proceeds of all sales of goods received under this contract, whether the proceeds are in cash, notes or book accounts, we, as agents of Columbus Buggy Co., agree to hold the same in trust for the benefit of and subject to the order of Columbus Buggy Co. until we have paid in full, in cash, all our obligations of whatsoever nature now due or yet to become due to the said Columbus Buggy Co.   And the sale and disposition of all goods received under this contract it is hereby mutually agreed shall be made and the proceeds thereof held by us as the agents of said Columbus Buggy Co. The title to and ownership of all goods received or shipped under this contract shall remain vested in Columbus Buggy Co., but nothing in this clause to release us from making settlement and payment of our obligations as herein provided.   We accept the same terms on all further orders we may send you during the year.   No agreement or understanding with agents will be recognized unless noted in the order.   The conditions of guarantee published in your catalogue are hereby acknowledged as binding with reference to the order.

"(Subject to approval of home office.)

(Signed)           "J. M. SMITHA."

The vehicles in controversy were a part of the goods received by Smitha on this order.   The appellees claimed under a sale and delivery by Smitha in satisfaction of a debt he owed them. It was not questioned that they were wholly without notice of appellant's claim, nor was the adequacy of the consideration supporting the sale brought in question.   All other facts pertinent to the controlling questions involved appear in the opinion.   The trial in the lower court was without a jury, and re-

sulted in a judgment for defendant.   Plaintiff's motion for a
new trial having been overruled, this appeal was prosecuted.

*Martin & Conner*, for the appellant.

1. By the terms of the contract between appellant and Smitha,
the latter became its agent or trustee, and could not defeat its
rights as owner of the property in his hands by a sale of it in
payment of his own debt, whether the purchaser was ignorant
of appellant's rights or not.   That is a very different thing
from a sale in due course of business.   Smith's Mer. Law., p.
178 (3d ed.); Evans on Principal and Agent, § 3; Tiedeman on
Sales, § 317; *Warner* v. *Martin*, 1 How. (U. S.), 209; Am.
Dig., 1893, p. 4450, §§ 368, 369.

2. In all sales of personalty, where the prepayment of the
price is made a condition precedent, no title passes to the ven-
dee.   Especially is this the case where title is expressly re-
served to the vendor.   Benj. on Sales, § 320; Tiedeman on
Sales, §§ 85, 87, 206, 325; 21 Am. & Eng. Enc. L., p. 485;
Am. Dig., 1887, p. 1154, §§ 209, 210, 212; *Fosdick* v. *Schall*,
99 U. S., 235; *Fosdick* v. *Car Co.*, *Ib.*, 256; *Warner* v. *Mar-
tin, supra;* 49 Miss., 550; 53 *Ib.*, 596; 56 *Ib.*, 552; 68 *Ib.*,
500; 70 *Ib.*, 584.   In such cases no title passes, and the ven-
dor may follow the property into the hands of third persons
who have acquired it without notice of his rights.   In some of
the states there are statutory requirements as to recording such
conditional sales, and, in those states, relief has properly been
denied to vendors against innocent persons, and this fact will
explain an apparent conflict of authority on the point in ques-
tion.   See Benj. on Sales, § 320; Tiedeman on Sales, §§ 203,
317, 325; Am. & Eng. Enc. L., p. 485; Am. Dig., 1887, p.
1155, §§ 226, 233, 234, p. 1156, §§ 235, 242, 243, 244, 245;
Am. Dig., 1893, p. 4450, §§ 368, 369; 11 How. (U. S.), 209;
53 Miss., 596; 54 *Ib.*, 584; 56 *Ib.*, 552; 68 *Ib.*, 691; 70 *Ib.*,
54, 584.   In such cases of condition precedent, where the pur-
chase price is payable in installments, and a portion of the same

has been paid, the vendor may retake the property or otherwise assert his rights, without tendering back the money or consideration received. *Duke* v. *Shackleford*, 56 Miss., 552; *Dederick* v. *Wolf*, 68 Miss., 500; Tiedeman on Sales, § 325; Am. Dig., 1893, p. 4449.

3. Section 4234, code of 1892, does not apply to voluntary conveyances between debtor and creditor of property used or acquired by the debtor in his business. The appellees rely on *Howe* v. *Kerr*, 69 Miss., 311, in support of the view that Smitha could himself make the appropriation of the property used or acquired in the business conducted by him in the manner shown that under this statute his creditors might have had made by resorting to their legal remedy. In that case, however, the title to the goods had, to the knowledge of the vendees of the "active" partner, been vested in him absolutely, without condition of any kind, and there was nothing to indicate knowledge in such vendees of any change in the title so far as the "silent" partner was concerned, while here Smitha had never had title at all.

Except in so far as § 4234 may apply, appellants were secure in leaving the buggies with Smitha up to the limit of three years' possession by him. A record of their rights as against the world was necessary only beyond that limit. Then, if unnecessary within the three years, although a proper subject for record, what purpose would have been served by having the contract recorded? This court has decided that notice does not affect a creditor's asserting his rights. The point was raised in *Gumbel* v. *Koon*, 59 Miss., 266, and the court decided that notice cut no figure under § 1300, code of 1880 (§ 4234, code of 1892). In *Wolf & Marks* v. *Kahn*, 62 Miss., 814, the point was raised that there was record notice of the sale by a merchant, but he had allowed his son to remain at the place of business and continued in and about the place assisting in the management of the business, and the court held that creditors could not invoke the statute in spite of the recorded sale.

Then, it would seem that "notice," either actual or construct-ive, would have made no difference, and in no way could the appellant have been secured.    The mere statement of this proposition is an answer to the contention of the appellee.

There can be no doubt as to what the rights of creditors really are under this statute.    In a long list of cases where creditors were asserting their rights by attachment, execution or other process, the statute was applied, and the property "used or acquired" by the debtor was held liable for his debts. The creditors, however, were all seizing creditors, and the pro-ceeding was *in invitum*.    The debtor did nothing.    In another class of cases, where the step taken was on the part of the debtor himself, voluntarily, with no other liability than to pay his debts, this court decided that the statute did not apply.    In *Dodds* v. *Pratt*, 64 Miss., 123, it was held that an execution did not take precedence over a pre-existing trust deed on a stock of goods owned by a man doing business in his own name. In *Gayden* v. *Tufts*, 68 Miss., 691, the debtors—"traders" —assigned, and the conditional vendor recovered the property from the assignee in possession.    In *Kinney* v. *Paine*, 68 Miss., 258, the point was made that creditors of an insolvent had bought his assets acquired in his business, and without notice, but the court decided in favor of the owner of a claim for the proceeds of a certain draft.    In *Tufts* v. *Stone*, 70 Miss., 54, the conditional vendor recovered his property after the same had been conveyed to an assignee for creditors by a firm doing business with only "Martz Bros." appearing on their sign, and after a distress for rent had been levied on the property in the hands of the assignee by the landlord of the assignors on whose premises the property was situated.    In *Journey* v. *Priestly*, 70 Miss., 584, the facts were Covington and Journey were partners in a livery stable business—"traders," if Smitha was one.    Journey sold his undivided one-third interest in the business and its assets to Billingslea for a part cash, taking a note for the balance, and reserving title in himself until pay-

ment. No record of the sale was made; Billingslea forméd a partnership with Covington, under the firm name of Covington & Billingslea. Subsequently, Billingslea in turn sold his third interest to Priestly, who bought without notice of the claim of Journey, and thereupon the business was conducted by Covington and Priestly under the name of Covington & Priestly. The court recognized the right of Journey to retake his property, to assert his undivided third ownership in it, even against Priestly. We invite attention to this case especially.

*Proby & Clinton*, for the appellees.

1. One who receives goods from his debtor, in satisfaction of his debt and to pay him for the cotemporaneous assumption of other obligations of the debtor, is a *bona fide* purchaser. *Keith* v. *Heffelfinger*, 12 Neb., 497.

2. A *bona fide* purchaser of goods from an agent who has been authorized by his principal to sell, will acquire title thereto, although the agents held the goods under a contract by which title was reserved in the principal. *Ezzard* v. *Frick*, 76 Ga., 512; *Winchester Wagon Works Co.* v. *Carmen*, 109 Ind., 31, s. c. 58 Am. Rep., 382. This was not a case where the sale was for the possession and use of the property by the purchaser, as in the controversies heretofore passed on by this court, but one where the right to resell is expressly given to the purchaser.

3. Appellees, if they did not become creditors of Smitha when they indorsed his notes, certainly did when they had to take them up. Being creditors, he had a perfect right to sell them any of the property used or acquired in the business carried on by him in his own name, under the sign shown by the evidence to have been used by him. The law, at the instance of creditors, would have applied it in the same way. Code 1892, § 4234; *Howe* v. *Kerr*, 69 Miss., 311; *Paine* v. *Hall Safe & Lock Co.*, 64 *Ib.*, 175; *Gumbel* v. *Koon*, 59 *Ib.*, 264; *Shannon* v. *Bloom & Co.*, 60 *Ib.*, 828; *Wolf & Marks* v.

*Kahn*, 62 *Ib.*, 814; *Citizens' Bank* v. *Studebaker Bros.*, 71 *Ib.*, 544.

WOODS, J., delivered the opinion of the court.

The following excerpt from the agreed statement of facts found in the transcript, will demonstrate that appellees were creditors of Smitha in the sum of $1,700, viz.: Smitha being ''insolvent and in failing circumstances, and owing the banking house of Britton & Koontz the sum of $1,700, upon notes dated February 27, 1894, and January 11, 1895, shortly falling due, on which the said defendants, Turley & Parker, were accommodation indorsers, proposed to the said defendants that, as he, Smitha, would be unable to meet said notes at maturity, and as they would have them to pay, that if they, Turley & Parker, would take up said notes and assume certain other obligations owing by said Smitha, that he, Smitha, would make them a bill of sale to the property hereafter mentioned; that the said defendants did take up said notes, by the payment of the $1,700, and assumed the payment of $600 due by said Smitha for rent in arrears. Whereupon, the said Smitha, on the sixteenth day of February, 1895, in consideration of a receipt in full for the $1,700 paid by the defendants, and the assumption of the payment of said $600, sold his said business, including horses, carriages, buggies, harness, book accounts, etc., to the said defendants, Turley & Parker.''

It thus appearing that appellees were creditors of Smitha, under the authority of *Howe* v. *Kerr*, 69 Miss., 311, they are clearly entitled to be protected by the sale to them by their debtor to the extent of the $1,700. Section 4234, code of 1892 (§ 1300, code of 1880), protects the rights acquired by appellees under the sale to them from their debtor, to the extent indicated. The agreed statement of facts shows that Smitha transacted the business of a livery and sale stable, including the sale of carriages, buggies, etc., and that the only sign used at the place of such business was one with the words

"J. M. Smitha, Proprietor," and that the property in this litigation was used and acquired in that business. As to Smitha's creditors, the property was liable for his debts, and was in all respects to be treated as his property in favor of his creditors. As was said in *Howe* v. *Kerr*, "they [the creditors] might have subjected it [the property in controversy] to their demands by proceeding at law to judgment and execution, and what the law would have done it was permissible for the parties to do."

As to the debt of $600 due by Smitha for rent, and assumed by appellees § 4234, code of 1892, has no applicability. To the extent of this $600 Turley & Parker were purchasers.

This brings us to the remaining contention, viz.: Can the purchasers be protected in their title to the property thus acquired from Smitha against the claim of appellants, Smitha's vendors, who, by their written contract with Smitha, retained title to the property conditionally sold him until the purchase price should be paid, Smitha being a trader actively engaged in the business of hiring and selling carriages and buggies, and having authority in the contract itself to sell? The propounding of the proposition discloses features which distinguish the case from those where the conditional sale is made of articles for the use and consumption of the buyer, or where the property is not sold to a trader presumptively for resale, but for the use of the buyer. The books, including our own state reports, abound in cases of these characters, and the rule is well settled with us that here, in such cases, the title of the conditional seller will be protected. The present case is wholly unlike any heretofore decided in this court, and must be determined independently of former adjudications.

In the case before us, the vehicles were presumably sold to Smitha for resale. The course of business and common observation would, perhaps, raise that presumption. But no resort need be necessarily had to presumption. The seller has, in its contract, expressly authorized a resale by its vendee.

True, the contract shows a retention of title in the seller until payment is fully made, but true, also, is it, the seller has authorized the buyer to resell.   To resell was one of the two purposes had in view by both parties to the contract.   Now, what effect shall be given to these conflicting and inconsistent terms of the contract?   And, especially, what effect shall be given to these inconsistent terms when the buyer is not only apparently clothed with all the indicia of ownership, but when, by the contract itself, the *jus disponendi* is unequivocally conferred on the buyer?   It would seem that only one answer can be returned to these questions.   To permit the vendor in a conditional sale of personal property, bought in the course of trade for resale, to retain title and at the same time authorize the buyer to resell, would operate as a fraud upon innocent purchasers.

This case falls within a well-recognized exception to the general rule that no one can convey to another any better title than he himself has.   Benjamin, in his work on Sales, §§ 448, 449, states with perspicuity this exception.   In § 448, vol. 1, 4 Am. ed., the author uses this language: " The seller may be estopped from claiming title, as against a *bona fide* purchaser from the buyer in possession, by giving the buyer evidence of title or authority to sell."   And in the succeeding section an elaborate citation from *Leigh* v. *Railroad Co.*, 58 Ala., 165, is made, in which this exception to the maxim *nemo dat quod non habet* is strongly presented.   Said Brickell, J., in that case: " If the person intrusted with the possession of the goods and with the indicia of ownership or of authority to sell or otherwise dispose of them, in violation of his duty to the owner, sells to an innocent purchaser, the sale will prevail against the right of the owner."   To the same effect the following cases will be found: *Wilder* v. *Wilson*, 16 Lea, 548; *Winchester Wagon Works* v. *Carman*, 109 Ind., 31; *Ludden* v. *Hazen*, 31 Barb., 650; *Fitzgerald* v. *Fuller*, 19 Hun, 180; *Cole* v. *Mann*, 62 N. Y., 1; *Armington* v. *Houston*, 38 Vt., 448; *Rogers* v. *White-*

*house*, 71 Me., 222; *Burbank* v. *Crooker*, 7 Gray, 158; *Haskins* v. *Warren*, 115 Mass., 514; *McMahon* v. *Sloan*, 12 Pa. St., 229.

The only case seen by us in direct conflict with the view which we adopt as the sound one, is that of *Lewis* v. *McCabe*, 49 Conn., 141.   But that opinion seems to have rested largely upon the idea that the contract in that litigation was made upon and induced by the spirit and drift of the former Connecticut decisions in similar, though not identical, cases.   Near the conclusion of that opinion, this language is employed: "Possession, with the *jus disponendi* added, has been regarded by many courts as sufficient reason for declaring a contract colorable and fraudulent without regard to the real intent of the parties.   Bump on Fraud. Conv., 123, and cases referred to. We concede that there is much force in the reasoning supporting such a rule, but, at the same time, we must bear in mind the spirit and drift of our own decisions, as they may have induced the making of such contracts."

Many states have of late years enacted statutes requiring the recordation of contracts in which title is retained in the vendor, and many adjudications may be found under such statutes, but the cases cited by us were decided independently of statute, and, as it appears, before the enactment of statutes.

*Affirmed.*