FAIRBANKS COMPANY *v.* WILLIAM S. GRAVES.

[43 South., 675.]

SALES.  *Conditional sales.  Resale by buyer.  Remedy.*

Where a seller reserved title to personal property sold by him to
secure the purchase price, he may assert such title to enforce
payment against the buyer and those claiming under him, in
the absence of evidence that he knew the buyer was a dealer in
such articles and bought to resell.

FROM the chancery court of Copiah county.

HON. DAVID M. MILLER, Judge.

Fairbanks Company, appellant, was the plaintiff in the
court below; Graves, appellee, was defendant there.  From a
judgment in favor of the defendant, predicated of a peremptory
instruction, the plaintiff appealed to the supreme court.

The Fairbanks Company, a corporation, sued Graves, the ap-
pellee, in replevin to recover a gasoline engine sold by plaintiff
to the Freeman Service Company, from whom Graves pur-
chased the engine.  The suit was instituted before a justice of
the peace who rendered judgment in favor of plaintiff and
Graves appealed to the circuit court.  On the trial in the cir-
cuit court plaintiff introduced in evidence a written contract
entered into between it and the Freeman Service Company,
dated August 14, 1905, for the purchase by the Freeman Serv-
ice Company of the engine for $150, of which amount $75 was
recited as having been paid in cash, the balance $75 was agreed
to be paid within thirty days from date; it further provided
that the title to the engine was reserved in the seller until the
balance, $75, evidenced by a note of the Freeman Service Com-
pany, should be paid, and the balance was due and unpaid when
the action was begun.  It was undisputed that the contract was
not recorded in Copiah county, the domicile of the Freeman
Service Company.  Graves, the appellee, testified that he

bought the engine from the Freeman Service Company without notice of any claim of the plaintiff existing at the time, and that shortly thereafter the Freeman Service Company went into bankruptcy. Subsequently, while Graves was still indebted for part of the purchase price of the engine under his contract of purchase from the Freeman Service Company, he was notified, according to his testimony, by the attorney of the plaintiff, that the Fairbanks Company claimed title to the engine because the balance of $75 remained unpaid. Graves subsequently paid to the trustee in bankruptcy of the Freeman Service Company the balance due by him to the bankrupt upon the trustee indemnifing him against loss.

There was no evidence that the Freeman Service Company was a dealer in engines, although it was shown that it was engaged in plumbing, and had contracts for putting in electric lights and waterworks plants, nor was there evidence that the Fairbanks Company had any knowledge that the Freeman Service Company bought the engine with an intention of re-selling it, or that the Fairbanks Company had any reason to believe that it would be resold.

*Willing & Wilson,* for appellant.

The contention of the defendant, the appellee in this court, in the court below was, first, that the Freeman Service Company had been adjudged a bankrupt, and that the case should have properly been brought in the bankrupt court; second, that the defendant was an innocent purchaser for value, and had obtained a perfect title to the property in controversy from the Freeman Service Company.

As to the first of these contentions of appellee, we say that there is no proof in the record that the Freeman Service Company had gone into bankruptcy, and no proof that Geo. W. Covington was the trustee of the Freeman Service Company except the statement of Covington himself. Be that as it may, however, the court of bankruptcy had nothing whatever to do

with this controversy. This property had been sold by the Freeman Service Company to Graves long before the company went into bankruptcy, and whatever title the Freeman Service Company had in the engine had passed to Graves. The controversy concerning the title to the property was therefore between the Fairbanks Company and Graves, and the trustee in bankruptcy of the Freeman Service Company had no concern whatever with that controversy.

As to the second proposition relied upon by counsel for appellee, we say that the proof shows beyond a shadow of a doubt that Graves was not an innocent purchaser for value, and that he did not obtain a perfect title to the property in controversy from the Freeman Service Company. Counsel for appellee relied in the lower court on the case of *Columbus Buggy Company* v. *Turley,* 73 Miss., 529, 19 South. Rep., 232. That case is totally dissimilar from the case at bar. In that case the contract showed that the buggies were sold to J. M. Smitha, with the understanding that Smitha should have full control over the buggies and should have the right to sell and dispose of all the buggies received by him under the contract. The buggies were placed by Smitha in his place of business, and the only sign upon his place of business were the words: "J. M. Smitha, Proprietor," and the property in litigation was used and acquired in that business. This court very properly held in that case that a vendee of goods under a contract that reserved title in the vendor until payment was made, but also by its terms conferred a right upon the vendee to resell the same, has the power of disposition in respect thereto, and a creditor of the vendee who purchased the goods in satisfaction of his indebtedness, without notice of the vendor's claim, acquired title to the same. The facts in the case at bar are totally dissimilar from the facts in the case relied upon by counsel for appellee.

It is true that in this case there is some proof that the Freeman Service Company made contracts in several towns for the erection of electric light and waterworks plants, but there was

absolutely no proof that it ever maintained a place of business for the purpose of selling gasoline engines, and no proof that it ever sold a gasoline engine to any one else. It is true that the company offered to sell a Fairbanks engine to one Hawkins, but there was no proof whatever that it was the agent of the Fairbanks Company, and there was no proof that the Fairbanks Company shipped the company engines for the purpose of resale. The record simply shows one isolated sale from the Fairbanks Company to the Freeman Service Company, with a reservation of title, and sale by Paul Freeman, who was the same as the Freeman Service Company, to Graves, the appellee. Graves was not an innocent purchaser for value. *Watts* v. *Ainsworth,* 89 Miss .,40, 42 South. Rep., 672. We hardly deem it necessary to cite other authorities in support of the proposition that one who purchases personal property, the title to which has been reserved by the seller, is not an innocent purchaser as against the seller, even though without notice of the seller's rights, and although the contract is not recorded. See, however, on that proposition, the following cases: *Ketchum* v. *Brennan,* 53 Miss., 596; *Duke* v. *Shackleford,* 56 Miss., 552; *Dederick* v. *Wolfe,* 68 Miss., 500, s.c., 9 South., 350; *Tufts* v. *Stone,* 70 Miss., 54, s.c., 11 South., 792; *Journey* v. *Priestly,* 70 Miss., 584, s.c., 12 South., 799; *Gayden* v. *Tufts,* 68 Miss., 691, s.c., 10 South., 53.

Graves' own testimony shows also that he had notice of the claim of the Fairbanks Company in ample time to protect himself. While he was still owing the Freeman Service Company a balance of $108 on the engine, he was notified by the attorney of the Fairbanks Company, of the Fairbanks Company's claim, and of the reservation of title in favor of the Fairbanks Company, and he paid the $108 to Covington, trustee in bankruptcy of the Freeman Service Company, with his eyes open, and under a guarantee from Covington that he would see him harmless.

*J. S. Sexton,* for appellee.

Two questions present themselves in this case. The first is, whether the state court should have taken jurisdiction of the matters in controversy after the adjudication in bankruptcy of the Freeman Service Company. The second is, whether the Fairbanks Company could assert title to the engine in the hands of Graves who had purchased it from a dealer, the Freeman Service Company, to which company the Fairbanks Company had sold the property with knowledge that it would be placed upon the market by the vendee. Both of these questions should be answered in the negative.

By a sort of comity which is more easily understood than defined, but which is necessary for the harmonious operation of two systems of courts, one state and one federal in the same territory, there has grown up in this country a system or rule whereby the court which first acquires jurisdiction of the subject matter through its trustee or receiver, retains exclusive jurisdiction of the same until the whole matter is settled in that tribunal. Smith in his excellent work on Receivers, p. 182, refers to this rule as follows: "The purpose of this rule is to secure an economical administration of the estate, a speedy winding up of the litigation, and a fair and equitable adjustment of the rights of all parties in interest. Where all conflicting parties can be drawn into the same jurisdiction, a much more comprehensive and intelligent adjudication can be had, and entire justice to all parties can be secured thereby." Turning to sec. 2 of paragraph seven of the Bankruptcy Law now in force, we find that one of the things required upon the bankruptcy court is to "cause the estate of bankrupts to be collected, reduced to money, and distributed, and *to determine controversies in relation thereto* except as herein otherwise provided."

It is in no sense correct, as contended by opposing counsel, that, because the Freeman Service Company had sold this engine prior to its adjudication as a bankrupt, therefore the trustee in bankruptcy, Covington, had no concern with the contro-

versy. Only one-half of the purchase money, to-wit, $75, was due to the Fairbanks Company when the writ of replevin was sued out, the balance having been paid previously by the Freeman Service Company. The trustee in bankruptcy had the right either to resist all claim of lien on the part of the Fairbanks Company, or, if the lien should be conceded, to pay the $75 balance due the Fairbanks Company, and collect the $108 which was due by Graves to the Freeman Service Company. And, accordingly, this whole matter should have been submitted to the court of bankruptcy, and not to the state court. That Graves knew of the claim of the Fairbanks Company to the engine prior to the time he settled with Covington, the trustee in bankruptcy, in no way affects the rights of parties to the controversy.

Considering, now, the second question, whether the Fairbanks Company could assert title to the engine in the hands of Graves, we insist that Graves' character as an innocent purchaser was fixed when he made the purchase of the engine from the Freeman Service Company. He testified, without dispute, that the first hint he ever had that the Fairbanks Company had reserved title to the engine, was from what Wilson, attorney for the Fairbanks Company, told him, and this was after the proceedings in bankruptcy had been instituted.

It has never been doubted in this state, since the decision of this court in *Columbus Buggy Company* v. *Turley,* 73 Miss., 529, s.c., 19 South., 232, that "a vendee of goods under a contract that reserved title in the vendor until payment is made, but also by its terms confers a right upon the vendee to resell the same, has the power of disposition in respect thereto, and a creditor of the vendee who purchases the goods in satisfaction of his indebtedness, without notice of the vendor's claim, acquires title to the same." And if the circumstances surrounding any transaction are such that a vendor must have known that the vendee intended to resell the goods, or was buying them

for resale, the same rule applies regardless of whether the privilege was inserted in the contract or not.

It is abundantly shown that the Freeman Service Company was engaged in electric work, doing contracting work, etc.; that it had on hand three or four contracts, one at Utica, one at Rosetta, one at Hazlehurst, and one at Ruleville, and that it was a bidder whenever electric work or electric engineering was to be done.

The action of the lower court should not be disturbed.


MAYES, J., delivered the opinion of the court.

The record in this case does not warrant the conclusion that the Fairbanks Company sold this gasoline engine to the Freeman Service Company for the purpose of having it resold, or that it knew it was the intention of the Freeman Service Company to resell, or had knowledge of any such facts as would bind it with constructive notice of the intention of the Freeman Service Company to resell. This being the case it does not fall within the rule announced by the case of *Columbus Buggy Co.* v. *Turley,* 73 Miss., 529, 19 South., 232, 32 L. R. A., 260, 55 Am. St. Rep., 550. All the cases on this subject are reviewed in the case of *Watts* v. *Ainsworth,* 89 Miss., 40, 42 South., 672. There is nothing in the law which prohibits one merchant from selling an article of merchandise to another merchant, with reservation of title until the purchase money is paid, unless the article sold is meant to be resold, or is of such character as that it may be fairly inferred, when the sale is made, that the purpose of the purchase is to resell it. No absolute rule controling this subject can be laid down by this court, but each case must depend upon its own facts; and we only say that in this case we are not warranted in the conclusion that the Fairbanks Company sold this engine for purposes of resale, or that the character of the property sold was such as to bind it with notice of the use the purchaser intended to make of the property; nor are there such

facts in this record as would warrant the court in concluding that the Fairbanks Company had actual or constructive notice of the intention of the vendee.

If the trustee in bankruptcy has any right in the subject-matter of this litigation, this record is not in shape for it to be asserted by him.

It is to be hoped that the next legislature will put an end to the sale of personal property with reservation of title in the vendor, whereby the vendee is clothed with all the indicia of ownership, authority, and control over the property, and yet in truth does not possess the title. In order to make these contracts effective as to third parties, and prevent many wrongs being perpetrated on innocent parties under this character of contract, the legislature should require them to be recorded in the same manner as deeds of trust are required to be recorded, and, in default of such recordation, they should be held void as to innocent third parties. Cases of this nature are frequently coming to this court, and the evil effect of this kind of contract is made more and more manifest.

*The learned circuit judge should not have given the peremptory instruction. Therefore the case is reversed and remanded.*