STARR PIANO CO. *v.* MORRISON.

1. Sales—Conditional Sale—Consignment—Replevin by Consignor—Estoppel.

Under an agreement which provided that the consignee of the plaintiff's pianos might sell for cash or to responsible purchasers on credit, reserving a lien, no title passed to a purchaser who paid no cash but exchanged other property for the piano, in the absence of evidence tending to show that plaintiff is estopped to recover the property.

2. Same—Title.

Possession of personalty is merely *prima facie* evidence of ownership.

3. SAME—CUSTOMS AND USAGES—PRINCIPAL AND AGENT.

> The terms of a contract which clearly and explicitly give the consignee of a piano authority to sell, may not be extended by proof of a custom of piano dealers to make exchanges.

Error to Isabella; Searl, J., presiding. Submitted December 13, 1909. (Docket No. 181.) Decided February 3, 1910.

Replevin by the Starr Piano Company against John W. Morrison. A judgment for defendant is reviewed by plaintiff on writ of error. Reversed.

*H. A. Sanford* and *F. H. Dodds*, for appellant.

*F. C. Wallington* and *Francis McNamara*, for appellee.

HOOKER, J. Ray was a music dealer and carried on business at Ithaca, Mich., under the name of the Ithaca Music Company. In short, plaintiff claims that Ray and that company were one and the same person, the Ithaca Music Company being a trade-name which Ray had assumed and sometimes used. Ray, over his own signature, executed a contract with the Starr Piano Company, by which the latter agreed to consign pianos to Ray for sale. It fixed the terms on which they might be sold by Ray, and provided that sales should be settled for by Ray. It contained the following provisions:

"(1) The said company will (consign) to said party of the second part, to be sold for and on account of said company, pianos of such kind and quality and in such quantity or quantities as may be mutually agreed upon from time to time, upon the terms and conditions hereinafter set forth.

"(2) Said party of the second part shall offer or sell the goods consigned to him by said company, under the terms of this agreement, to parties residing in the counties of Gratiot and Isabella, State of Michigan. In assigning certain territory to an agent the Starr Piano Company do not thereby assume to pay commissions to said agent on other sales made therein.

"(3) The terms upon which said party of the second part may sell said pianos are (*a*) for cash; (*b*) to responsible parties for part cash and part lien paper; (*c*) to responsible parties wholly on lien paper; (*d*) or the same may be mortgaged or leased as hereinafter set forth. When sold or leased and returns made therefor in cash to said company within thirty days after shipment thereof by said company, said party of the second part shall pay the invoice less 10 per cent., or if returns be made in cash after thirty days and before sixty days after shipment thereof said party of the second part shall pay the invoice price less 9 per cent., or if returns be made in cash after sixty days and before ninety days after shipment thereof, said party of the second part shall pay the invoice price less 8 per cent., or if returns be made after ninety days and before four months after shipment thereof said party of the second part shall pay the invoice price less 8 per cent. If returns shall be made after four months from date of shipment, interest at the rate of six (6) per cent. per annum shall be added to the price of the invoice and continued until such time as the Starr Piano Company is paid all amounts, due on such instrument in full, except that a discount of 8 per cent. shall be allowed for cash.   *   *   *

"(12) No part of this agreement shall be construed as in any manner whatever divesting the Starr Piano Company of absolute ownership in every piano shipped by it to said party of the second part, or to any person or persons said party of the second part may direct the same to be shipped, until all demands due or owing to said company for such piano, with interest and expenses as aforesaid, shall have been fully paid."

The piano in question was sent to Ray, who receipted as follows:

"DETROIT, MICHIGAN, August 17, 1907.
"Consigned by the STARR PIANO COMPANY,
"Manufacturers of High Grade Pianos,
"To the ITHACA MUSIC CO.,
"Ithaca, Mich.
"Terms as per contract.
"One Starr Piano, Style R. No. 54,739.   Price $400.
"Received the above described piano, in good order and condition in all respects, and we agree to sell the same for account of the Starr Piano Co., and account to them or their authorized agent for the full value as above,

and that no expense or claim of any kind shall be made against the above described piano while we hold the same for sale, and that the above described piano shall continue to be the property of the Starr Piano Company, until the same is fully accounted for at value as above mentioned, as per contract. After four months from date of shipment, and until accounted for, six per cent. interest shall be charged us, but with the understanding that we will account for said piano within four months from date, and if not accounted for at the expiration of that time said piano to be returned·to the Starr Piano Company upon their order at our expense, either to Detroit, Michigan, or any place where they may direct, provided the rate of freight does not exceed that to Detroit, Michigan.

[Signature]          "ITHACA MUSIC CO.,
                                    "By F. J. Ray, Prop."

Both contract and receipt bore the same date, and there is nothing to indicate that any other piano was received under the contract. Plaintiff was never paid for the piano. Ray had previously sold a Stiger piano to a man named Morrison for which his consignor claimed he had not paid. Being anxious to get the Stiger piano into his possession to save trouble, he (Ray) sent an employé to see Morrison, with instructions to trade the piano involved in this suit to Morrison for the Stiger, and this was done; the exchange being even. Plaintiff replevied the piano in this action, and appeals from an adverse verdict and judgment.

This piano was delivered to Ray with express authority to sell, and, while no title passed upon its delivery to Ray, the plaintiff may be estopped as against a bona fide purchaser who relied on Ray's authority to sell from an assertion of title. See 6 Am. & Eng. Enc. Law (2d Ed.), pp. 486, 487, and Michigan cases cited, and pages 482 and 483 and notes; *Pratt* v. *Burhans*, 84 Mich. 489 (47 N. W. 1064, 22 Am. St. Rep. 703); Williston on Sales, § 317 and notes, section 329 and notes, and section 338 and notes; 1 Benjamin on Sales (Am. Ed.), §§ 448, 449; *Columbus Buggy Co.* v. *Turley*, 32 L. R. A. 260 (73 Miss. 529, 19 South. 232, 55 Am. St. Rep. 550), and cases cited therein. It was not error to leave the question of defendant's *bona*

*fides* to the jury, unless the fact that he traded the old piano for the new one was an act not within the scope of Ray's authority. It is contended by defendant's counsel that plaintiff gave Ray a general authority to sell its pianos, which gave him power to trade under the general custom, and, furthermore, that the defendant was not bound to inquire regarding limitations and secret instructions contained in the contract of agency or sale; while plaintiff contends that defendant's purchase was not authorized by the authority given nor was it a sale in the course of trade, nor was the purchase made in reliance upon any authority given, or any holding out of Ray as authorized to sell or trade the piano. What did the defendant know about Ray's title and right to sell? Only this: The offer of the piano at his place by Ray's salesman and his representation that it was Ray's piano. This was no more than the representation of Ray. The possession of the piano was no more than *prima facie* evidence of Ray's ownership, for it was as consistent with other theories; *e. g.*, that he was a bailee or wrongdoer. See Mechem on Agency, § 786.

These things were not enough to estop plaintiff. What is there then to estop him that came to defendant's notice? Not his contract surely, nor the fact that he had authorized Ray to sell, nor that he so held out to the defendant, nor even the fact that plaintiff had ever been the owner. He did nothing inconsistent with his claim that ever came to defendant's notice, or upon which he relied, or which induced his belief in Ray's ownership. Hence there is no estoppel in this case. Mechem on Agency, § 787.

It follows that the defendant must rely upon the actual authority given by the contract. It is silent upon the subject of exchanging. It gives authority to sell and to lease, but it provides in plain terms for cash and notes in payment, and is explicit in defining the terms on which the pianos may be sold. There is nothing in it which justifies an inference that the parties intended sales to be made in any other way, nor can the contract, which is clear and

explicit, be enlarged by proof of a custom on the part of piano dealers in general to exchange pianos.   Mechem on Agency, § 352.   The fact is obvious that Ray's agent went to the defendant with a falsehood, and bartered plaintiff's instrument, which he had not a right to do, instead of selling it, as he may have had a right to do.  Had defendant known or supposed he was dealing with plaintiff's agent, and even had a right to suppose that he had authority to sell, without further inquiry, he should have known that the exchange made was not within an authority to sell.   See Mechem on Agency, §§ 326, 352.

Upon the undisputed facts a verdict should have been directed for plaintiff.

The judgment is reversed, and a new trial ordered.

MONTGOMERY, C. J., and OSTRANDER, MOORE, and McALVAY, JJ., concurred.