[No. 16724.  *En Banc.*  March 17, 1922.]

S. G. HARDIN, *Respondent,* v. STATE BANK OF SEATTLE, *Appellant.*

STATE BANK OF SEATTLE, *Appellant,* v. C. W. MARTIN, *as Trustee etc., et al., Respondents.*[1]

CHATTEL MORTGAGES (49)—RIGHTS AND LIABILITIES—USE AND DISPOSITION BY MORTGAGOR. A finding that a chattel mortgagee of automobiles allowed the mortgagor, a dealer, to sell the cars to innocent purchasers without obtaining a satisfaction of the mortgage is not sustained by proof of loose expressions to the effect that he might sell, but could not make delivery until after release of the mortgage.

SAME (43-2)—LIEN—RECORDING—SUBSEQUENT PURCHASERS. In view of Rem. Code, § 3662, making the record of a chattel mortgage constructive notice to the world, a mortgagee of automobiles does not lose his lien by allowing the mortgagor, a dealer, to display the cars on his sales room floor and exhibit them to prospective purchasers; since they, having constructive notice, cannot be regarded as innocent purchasers.

SAME (4)—VALIDITY—STOCK IN TRADE. A chattel mortgage upon a particular automobile held in stock by a dealer is not void as a mortgage upon a shifting stock in trade, as to purchasers charged with constructive notice by record.

HOLCOMB and MACKINTOSH, JJ., dissent.

Appeal from a judgment of the superior court for King county, Brinker, J., entered May 14, 1921, upon findings in favor of the plaintiff, in consolidated actions in replevin and to foreclose a chattel mortgage, tried to the court.  Reversed.

*Shank, Belt & Fairbrook,* for appellant.

*Tucker & Hyland* (*Ford Q. Elvidge,* of counsel), for respondents.

*Guy E. Kelly* and *Thomas MacMahon, amici curiae.*

[1] Reported in 205 Pac. 382.

TOLMAN, J.—Respondent, claiming to be the owner and entitled to the immediate possession of one certain Jordan touring car, No. 11,457, brought an action in the nature of a replevin to recover the possession thereof from appellant. Appellant answered, denying the material allegations of the complaint, and pleading affirmatively that it had a chattel mortgage on the car, duly executed and filed for record, and that it had taken, and then held, possession of the car by virtue of such mortgage. Thereafter appellant brought an action to foreclose its mortgage, alleging the necessary facts as to the loaning of the amount thus secured, the giving of the note and mortgage, the filing of the mortgage for record, and the nonpayment of the debt. Respondent, by answer, denied the material allegations of the complaint, and affirmatively pleaded that the mortgagor, the Mitchell Motor and Service Company, Incorporated, was engaged in the business of selling motor cars, and with knowledge and consent of appellant, displayed this particular car in its show rooms for sale, and, with authority from appellant so to do, sold it to respondent for its full value of $3,150; further alleging that it was the usual and customary course of dealing between the appellant and the Mitchell Motor & Service Company followed for more than two years; that appellant would furnish the money necessary to take up the bill of lading, when a shipment of cars arrived from the manufacturer consigned to the Mitchell Motor & Service Company, take and file for record a chattel mortgage on the cars so received, and then permit the Mitchell Motor & Service Company to display for sale and sell the mortgaged cars, and thereafter account to it for the proceeds of such sales. The affirmative matters were denied; the two cases were, upon stipulation, consolidated for trial, and

being tried to the court, resulted in a judgment award-
ing the car to respondent, with damages for its deten-
tion, and denying a foreclosure of the chattel mortgage,
from which result the appellant brings the consolidated
causes here for review.

The trial court, among other things, found:

"That the said above named Mitchell Motor and
Service Company used the proceeds with the knowl-
ledge and consent of the said State Bank of Seattle
from the sale of cars mortgaged to the said State Bank
of Seattle, to repay to the said State Bank of Seattle
the amounts due upon the mortgages, and that had
been the custom for more than three years last past.
The said above named State Bank of Seattle, by its
acts in permitting the said automobile sued for herein
and the other automobiles upon which they had mort-
gages to be placed in the show rooms of the said com-
pany for sale, and by its course of dealing with the
said Mitchell Motor and Service Company to sell the
cars upon which they had mortgages, are now in equity
and good conscience estopped from claiming any in-
terest in and to the car No. 11457 sued for herein, the
said S. G. Hardin being the purchaser for value in good
faith without notice of the claims or mortgage of the
above named State Bank of Seattle."

Appellant's chief attack is directed at this finding,
making it incumbent upon us to examine with care all
of the evidence in the record bearing upon the course
of dealing between the mortgagor and the mortgagee.
This we have done, and while there is plenty of evi-
dence showing that the mortgagor was remiss in this
respect, and wrongfully disposed of mortgaged cars,
there is no evidence whatever to show that appellant
ever had any knowledge of, or consented to the sale of
a mortgaged car in any instance. True, there are some
loose expressions by appellant's officers to the effect
that the mortgagor might sell, but could not make de-

livery until he had secured a release of the car sold, and that the bank expected to get its money out of the sale of the mortgaged cars; but where the mortgagee's course of dealing is clearly shown, as here, to the effect that it never gave the mortgagor reason to believe that it had any authority to sell any car until after it had procured a release of the mortgage as to such car, these expressions fall far short of establishing an intent to permit the mortgagor to sell without reference to the mortgage, or make appellant a party to the fraud upon the purchaser. Indeed, the expressions used are more susceptible of a construction which will harmonize them with the direct evidence upon the subject than the contrary, and must be held to mean that the bank's officers expected the mortgagor to find possible purchasers and make preliminary arrangements for sales, but to fully advise the intending purchaser of the incumbrance and take him to the bank for the purpose of discharging the mortgage before the sale could or should be completed, or otherwise enable him to fully protect himself against the mortgage. Such a course of dealing is the natural one, and it not having been shown that the appellant had any reason whatever to suspect the mortgagor of any dishonesty in intent or act, it cannot be held to be a party to its dishonesty.

The learned trial court felt, as all must feel, that the purchaser, in dealing with an apparently reputable concern, housed in an extensive building, and carrying a large stock, acted but naturally in neglecting to search the chattel mortgage records, and therefore placed the loss upon the bank; but while we sympathize with the purchaser, we feel that our recording statute, Rem. Code, § 3662 (P. C. § 9761), which makes every chattel mortgage duly filed and indexed "full and sufficient notice to all the world," etc., must be considered and

given some weight, and therefore the rule that the trial court attempted to apply, "when one of two innocent persons must suffer, he whose conduct was the cause of the loss must bear the loss," cannot be here applied, because, under the statute, respondent had constructive notice, and cannot in law be said to be an innocent party.

Some contention is made that, under the facts of this case, the automobile in question should be held to have been a part of a shifting stock of merchandise, and the mortgage therefore void under the rule laid down in *Keyes v. Sabin,* 101 Wash. 618, 172 Pac. 835, and *Miller v. Scarbrough,* 108 Wash. 646, 185 Pac. 625, but it must be borne in mind that those cases treat of mortgages upon a stock in trade, the description of which must be general only, and in which it is expressly provided that the mortgagor may sell in the ordinary course of trade. It has never yet been questioned, so far as we are aware, that the purchaser who, in the regular course of business, buys an article from such a stock takes good title free from the lien of the mortgage. Consequently those cases have no application here.

Our statute, Rem. Code, § 3659[1] (P. C. § 9759) authorizes the giving of a chattel mortgage on all kinds of personal property, and when, as here, such a mortgage is given upon a specifically described article without any provision for its sale, where there is no course of dealing showing authority to sell, and notice "to all the world" has been given by filing and indexing as the statute provides, we are powerless to protect the unwary purchaser. The power to do so lies with the legislature, and, under modern conditions, legislative action may well be taken. It is true that the supreme court of Virginia has taken a different view. *Boice v.*

[1] NOTE: See Rem. Comp. Stat., § 3779.

*Finance and Guaranty Corporation,* 127 Va. 563, 102 S. E. 591, 10 A. L. R. 654, and *O'Neil v. Cheatwood,* 127 Va. 96, 102 S. E. 596, but Virginia is one of the few states which has adopted the rule that a mortgage on a shifting stock of goods is void *per se.* We do not consider the Virginia case sufficient authority to warrant a disregard of the plain meaning of our statute hereinbefore referred to.

The facts in this case as we find them render it unnecessary to discuss the authorities cited upon the question of equitable estoppel.

The judgment appealed from is reversed, and the cause remanded with directions to enter a decree foreclosing the chattel mortgage.

Parker, C. J., Mitchell, Bridges, Fullerton, Main, and Hovey, JJ., concur.

Holcomb, J. (dissenting)—I am unable to give my assent to the decision of the majority.

I concede that the chattel mortgage in question was not a mortgage upon a shifting stock of merchandise, but was a mortgage upon specific chattels described therein.

The cars were, however, known by the bank, as mortgagee, to be intended for sale to the general public as a part of the stock of the mortgagor. The bank's officers did not require anything more than that the mortgagee procure a release of the mortgage on any specific car when sold. The mortgage did not provide against sale or removal, and the bank's officers knew that they were being sold. Mr. Grondahl, an officer of the bank, testified that he so knew. He testified that the bank loaned the Mitchell Motor & Service Company a great deal of money and that the company was selling the particular cars that the bank had mortgages on. The officers of the mortgagee trusted Osmond, the manager

of the automobile company. Grondahl testified that the officers of the bank went up twice in a period of three or four years to see that the numbers were correct as described in their mortgages. The mortgage described the property as being located and kept at Pine and Summit, in the city of Seattle.

It seems to me that the plainest principle of equitable estoppel estops the mortgagee from recovering against this respondent who is an innocent purchaser for value.

It will not do to say that, because the mortgage was recorded, the automobile company could give respondent no better title than it had, and that it was respondent's duty to see what title the seller had. By its course of dealing the appellant, as mortgagee, put it in the power of the automobile company to defraud every purchaser of a car it procured. "Where one of two equally innocent persons must suffer, he should bear the burden whose conduct has induced the loss," is a principle of equity and common justice which we have asserted and applied in a great many cases.

If the decision stands, as respondent asserts, it will make it unsafe for any person to buy any article in any store in any town or city. If we hold that the bank is not estopped by its conduct, or did not waive the protection of the recording statute, and that Hardin should have investigated the records of King county before paying his money for the car, then no person can safely buy a sewing machine, a piano, or any other such valuable chattel without employing an attorney to search the records for him, or running the risk of having the article subsequently taken from him. It, as ssserted by respondent in this case, changes the recording statute into a sword instead of a shield. Many cases could be cited to sustain my position, but being so hopelessly in the minority, it would be profitless to do so and I forbear to cite them.

Regardless of precedents, in reason, equity and justice the judgment should be affirmed.

MACKINTOSH, J., concurs with HOLCOMB, J.