[No. 17241.  Department One.  August 28, 1922.]

GRAMM-BERNSTEIN MOTOR TRUCK COMPANY, *Appellant,*
v. WILBUR R. TODD *et al., Respondents.*[1]

SALES (178)—CONDITIONAL SALES—BONA FIDE PURCHASER FROM
VENDEE—TITLE OF VENDOR—ESTOPPEL.  A manufacturer of trucks,
which delivered possession to a dealer under conditional sales con-
tracts, duly recorded, is estopped to assert its reserved title, as
against a bona fide purchaser from the dealer, where it knew of
the dealer's custom, for a period of years, to make sales as owner
of the trucks and afterwards remit the proceeds to secure a release
of the conditional sales contracts; since its conduct is inconsistent
with the idea of retaining title by virtue of the sales contracts.

REPLEVIN (44)—JUDGMENT—FORM AND REQUISITES.  In an action
of replevin for an automobile, plaintiff in no event is entitled to a
money judgment against defendant for money paid on the purchase
price of a car after suit commenced with full knowledge of plaintiff's
claim.

SALES (178)—CONDITIONAL SALES—BONA FIDE PURCHASER FROM
VENDEE.  Where a conditional sales vendee sold a truck as owner
with the knowledge of the conditional sales vendor, the bona fide
purchaser would not be justified in refusing to pay his purchase
price promissory notes, in the hands of assignees, although he had
knowledge of claims against the conditional sales vendee.

Appeal from a judgment of the superior court for
Pierce county, Askren, J., entered December 16, 1921,
upon findings in favor of the defendants, in an action
of replevin, tried to the court.  Affirmed.

*Guy E. Kelly* and *Thomas MacMahon,* for appellant.
*H. G. & Dix H. Rowland,* for respondents.

BRIDGES, J.—The appellant is the manufacturer at
Lima, Ohio, of a certain truck bearing its name.  Some
years ago it made an arrangement with one N. F. Rea,
of Tacoma, whereby he was authorized to pur-

[1]Reported in 209 Pac. 3.

chase and exclusively sell its trucks in a certain territory in Washington, including Pierce county. Generally speaking, the trucks would be shipped to Rea, who, before being able to obtain the bill of lading, would be required either to give to the appellant a chattel mortgage securing notes representing the purchase price or a conditional sales contract. Rea had his place of business in the city of Tacoma, and usually kept one or more of these trucks on display and for sale. During the past three or four years he had sold a number of appellant's trucks. In the latter part of 1920, appellant shipped to Rea the truck here involved. It was surrendered into his possession upon the execution of a conditional sale contract. This contract fixed the price to be paid, the times of payment, and provided that title should remain in the appellant at all times until the full purchase price was paid, and contained other covenants usual in such instruments. This contract was filed with the auditor of Pierce county within the statutory time.

Sometime in March, 1921, Rea sold the truck to the respondent A. Holroyd for $5,682.50. At the time of the sale the truck was in Rea's display room. Holroyd paid down a part of the purchase price and gave to Rea his notes covering the balance, and Rea gave to him the usual conditional sales contract. The truck was then delivered into the possession of Holroyd. Almost at once after the sale Rea assigned to the respondent the Automobile Finance Company of Tacoma, the notes received from Holroyd, and also the conditional sales contract. It appears that Rea did not pay the appellant the balance of the purchase price for the truck, and because thereof it replevied the machine, which it found in the possession of Holroyd.

The sole question is whether Rea had power and authority to agree to sell this truck to the respondent Holroyd and convey a good title to him. It may be conceded for the purposes of this case that, under the circumstances above related, the appellant might agree to sell its truck to Rea and under its conditional sales contract hold the title, even as against a person to whom Rea might sell, such person not having any actual knowledge of the conditional sale. But to accomplish this the appellant must have dealt with Rea in a manner not inconsistent with the conditional sales contract. In this particular case we do not find that this was done. As a matter of fact, over a period of years it seems to have been Rea's custom to sell these machines and thereby obtain money to discharge the chattel mortgages or to secure a release of the conditional sales contracts theretofore made to appellant. The record shows quite conclusively that not only did appellant know of this custom of Rea, but actually knew he was making sales as the owner of the trucks and afterwards remitting the proceeds to it. The appellant wrote to Rea a number of letters which bear out this idea. In one letter to Rea, as early as February, 1917, it said: "Mr. Bernstein also requests me to tell you that at any time you may sell one of the trucks, to promptly forward us a check so that we can have the interest on the notes stopped instantly." In another letter we find: "We trust, therefore, that you will make an effort to sell this 2½-ton to some prospect in your territory, so that you can take (care) of the note." In another letter it is stated: "We expected you to send a remittance before the note would be past due; but if you have not as yet sold the truck you evidently cannot pay for it . . ." There was other evidence of similar purport. This conduct is entirely

inconsistent with the idea of the appellant's retaining title by virtue of the conditional sales contract. It is estopped by its conduct to claim that it is the owner of the truck and that Rea had no authority to sell it and convey a good title. If one intends to claim title under a conditional sale contract his conduct must not be inconsistent with the terms of that instrument. *Hardin v. State Bank of Seattle,* 119 Wash. 169, 205 Pac. 382.

The appellant contends that Holroyd paid to the finance company some $2,000 of the purchase price for the truck after the commencement of this suit, and after he had full knowledge of appellant's claim, and that, in any event, it is entitled to judgment for that sum. This was a replevin suit and in no event would a money judgment of the character requested have been proper; but we consider that Holroyd had a perfect right to pay this money to the finance company, even after he knew of appellant's claim. The amount paid by him was to discharge his own notes which were then outstanding, and the mere fact that he might at the time of payment, have been acquainted with appellant's rights would not have justified him in refusing to pay the persons to whom the notes had been assigned.

The judgment is affirmed.

PARKER, C. J., FULLERTON, MITCHELL, and TOLMAN, JJ., concur.