## Richmond.

## O'NEIL V. CHEATWOOD.

### March 18, 1920.

CHATTEL MORTGAGES—*Goods Intended for Sale by Retail Dealer— Automobiles—Bona Fide Purchaser.*—A licensed dealer in automobiles gave plaintiff a bill of sale upon a car to secure money lent him by plaintiff to pay the draft attached to the bill of lading of the car. The chattel mortgage was acknowledged and admitted to record, but the automobile was not removed from the licensed dealer's possession.

*Held:* That the bill of sale to plaintiff was void as to a purchaser of the car, and unless she had some notice of plaintiff's title, other than that offered by the recordation of the bill of sale, she took good title as against plaintiff. On the question of such notice the burden of proof was on plaintiff in an action of detinue.

Error to a judgment of the Law and Equity Court of city of Richmond, in an action of detinue. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*A. H. Sands,* for the plaintiff in error.

*David Meade White* and *S. A. Anderson,* for the defendant in error.

BURKS, J., delivered the opinion of the court.

Cheatwood, in an action of detinue, recovered an auto-

mobile from Mrs. O'Neil, and to the judgment of the trial court this writ of error was awarded.

The evidence, so far as it need be recited, presents the following case: William F. Gordon was a licensed dealer in automobiles in the city of Richmond on May 1, 1917, and had been engaged in that business for fourteen or fifteen months prior to that time. His place of business was at 1631 west Broad street. He was the representative in Richmond of the National automobile. About May 1, 1917, he had a National car in the depot but did not have money enough to pay the draft attached to the bill of lading and get the car out. He thereupon applied to Cheatwood for a loan of $800 for an hour or so, saying he wished to get the car out, and deliver it to Mr. Dominski, to whom he had sold it, and would return the money. Cheatwood made the loan, his son attending to it as he had to leave the city. He left the city, and was absent for several days. Upon his return he found a letter from Gordon, acknowledging the loan of $800, and promising to return the sum of $825 as soon as he sold the car. In this letter, Gordon further says:

"I have a number of prospects for the sale of this car, one of which I can close up tomorrow, but owing to the fact that it may be a case of trade-in, I will hold the car subject to your order for a day or two until I can get the best price for same."

Cheatwood testifies that nothing was said about any $25 when he made the loan. This letter made Cheatwood uneasy about his loan, and he, at once, consulted counsel, who advised him that he had no security for his money. In company with his counsel he went at once to see Gordon, and, according to his testimony, Gordon told him he might take the automobile for his debt of $800, and gave his counsel the make, number and description of the car. His counsel thereupon prepared a bill of sale of the car from

13

Gordon to Cheatwood, dated May 8, 1917, and it was acknowledged and admitted to record May 10, 1917. The automobile was not removed from Gordon's possession. On May 12, 1917, Gordon sold and delivered the automobile to Mrs. O'Neil, who had no actual knowledge of the bill of sale, for the price of $1,450 cash. Gordon's testimony is to the effect that the cost price of the machine was about $1,200, and that the bill of sale was intended only as a mortgage to secure the loan of $800, and the jury took this view of it, though Cheatwood's testimony was very positive that it was an out and out sale of the automobile for the $800 debt. On May 18, 1917, Cheatwood went to Gordon's place of business and demanded possession of the automobile. Gordon mentioned different places at which the car could be found, "and he finally told us late in the evening that it was at Mrs. O'Neil's." He then went to Mrs. O'Neil's and found the car, claimed it as his and demanded possession thereof. Possession was refused, and this action was brought for its recovery the next day. Cheatwood testifies that Mr. and Mrs. O'Neil said "that the man who sold them the car said that he had to sell the car so that he could pay off the mortgage on it, and was willing to sell it cheap;" he further testified that he found out afterwards from the record that the same day that Gordon sold the car to him he mortgaged it, but that his bill of sale was recorded before the mortgage. He does not say that they gave any intimation of any knowledge of his bill of sale. Mr. O'Neil, the only witness examined on behalf of the defendant, except Gordon, denies positively making the statement about the mortgage attributed to him by Cheatwood. He says, "No, sir, I never told Mr. Cheatwood there was a lien on the car, because I never knew there was a lien on the car." Again, he says, "As to any mortgage or anything else on the car, I didn't know it." The sale of the car to Mrs. O'Neil was negotiated through her husband acting on her

behalf, and a man named Brown, acting on behalf of Gordon, who brought the car to Mrs. O'Neil's place of business and offered it for sale.

The errors assigned arose mainly on instructions granted and refused, but, in the view we take of the case, it will not be necessary to review the rulings thereon specifically, nor to consider several legal propositions discussed by counsel both orally and in the briefs. Instruction No. 1, given for the plaintiff, is plainly in conflict with the views entertained by this court. That instruction is as follows:

"(1) The court instructs the jury that if they believe from the evidence that the bill of sale for the automobile in the suit was executed by W. F. Gordon to the plaintiff for a valuable consideration, and was regularly recorded before the defendant purchased the automobile from Gordon, then the law imputes to the defendant notice of the terms of the bill of sale, although she had no actual notice thereof, and the right to the automobile so acquired by the plaintiff takes priority over the right of the defendant purchaser, and they should find for the plaintiff."

The case is not essentially different in principle from *Boice* v. *Finance and, Guaranty Corporation*, 102 S. E. 591, in which an opinion was handed down to-day, and hence the views there expressed need not be here repeated. The bill of sale to Cheatwood was void as to Mrs. O'Neil, and unelss she had some notice of Cheatwood's title, other than that offered by the recordation of the bill of sale, she took good title as against him. On the question of such notice the burden of proof was on Cheatwood and he has not sustained it. The result is she acquired good title against him.

The judgment of the law and equity court will, therefore, be reversed, and this court proceeding to enter such judgment as to it seems right and proper, will set aside the verdict of the jury and the judgment entered thereon,

and will enter judgment that the action of Cheatwood be dismissed, and that Mrs. O'Neil, the defendant therein, recover of him her costs expended about her defense in the trial court and also in this court.

*Reversed.*