ASSOCIATES DISCOUNT CORPORATION *v.* SLAYTON, et al.

No. 39929 February 13, 1956 85 So. 2d 199

April 9, 1956 86 So. 2d 509

*Deavours & Hilbun,* Laurel; *Wright, Overstreet & Kuykendall,* Jackson, for appellant.

782

*Young & Daniel,* Jackson; *Grover Doggette,* Laurel, for appellees.

Lee, J.

Six replevin actions for the possession of automobiles were filed by Associates Discount Corporation in the County Court of Jones County. They were numbered 3101 through 3106 inclusive. In each case, one of the

appellees intervened and filed his claim. In No. 3104, James H. Plunkett was the intervenor. There was a stipulation that the facts in his case, with certain exceptions, were the same in the other cases. The county judge, by agreement sitting as both judge and jury, found for the intervening claimants. On appeal to the circuit court, the cases were consolidated and the several judgments were affirmed. From that judgment, Associates Discount Corporation appealed.

James C. Hobson, Jr., President and General Manager of Lowe Motor Company of Laurel, Inc., a Mississippi corporation, purchased for $1,575 at Cofield's Auction at Boaz, Alabama, a Ford automobile, owned by James H. Plunkett, doing business as Plunkett Pontiac Sales at Albertville, Alabama. The "condition of purchase" agreement, or bill of sale was made out by the auction bookkeeper, who gave the original to Hobson, a copy to Plunkett, and retained a copy himself. Plunkett knew that Hobson was in the used car business at Laurel, and that he was purchasing the car for resale. On the day of the sale, October 6, 1952, Hobson gave to Plunkett Pontiac Sales in payment a customer's draft for $1,575, drawn on Lowe Motor Company, through the Commercial Bank and Trust Company of Laurel, Mississippi. Following the sale, Hobson and his employees took the Ford and other cars, which had been purchased at the auction, and started on the return trip to Laurel.

Just before reaching Meridian the next morning, Hobson stopped at an automobile auction about two miles from town, left the cars with an employee, and went to the office of Associates Discount Corporation in the city. He and his company had previously done considerable business with this finance company. Because of mutually satisfactory and agreeable relations, the finance company had extended them a $20,000 line of credit, as a result of which it made no inspections of automobiles on which loans were made, unless the aggregate borrow-

ings exceeded that amount. He executed a trust receipt and obtained a loan of $6,785 on four automobiles, $1,155 being advanced on the Ford. These loans conformed to values in accordance with the generally accepted N. A. D. A. schedule. This loan, together with the outstanding indebtedness, amounted to less than $20,000. No employee of the finance company saw the cars, or the bills of sale thereon, or asked any questions concerning the title thereto, or was apprised that the purchase price had not been paid. After obtaining the loan, Hobson and his employees drove the automobiles to Laurel and placed them on the yard of Lowe Motor Company.

When the draft to Plunkett Pontiac Sales was presented in due course by the bank, Lowe Motor Company refused to accept and pay the same. Consequently on October 13, 1952, the bank returned it unpaid. About this time Hobson notified Associates Discount Corporation that the company was not going to pay its debt under the trust receipt, and that, if it wanted the cars, it would have to replevy them. The suit then followed.

The "conditions of purchase" instrument, after warranty of ownership by the seller, disclaimer of liability against Cofield's Auto Auction, and examination and acceptance by the buyer, provided that "* * * it is expressly agreed by the undersigned buyer that the title and ownership of said automobile * * * shall remain in said vendor or assigns until any check, draft, due bill, note or any other instrument given for the purchase price of said automobile, * * * has been fully paid, * * * and that said title shall not pass to the buyer and this bill of sale becomes absolute until the payment in full of such check or checks, draft, due bill, note, or instrument, * * * and delivery up of the same to the buyer as above provided, and in the meantime the buyer assumes all risk of the destruction of said automobile by any way or means.

"THIS AUTOMOBILE IS BEING BOUGHT FOR RESALE ONLY."

The trust receipt made Associates Discount Corporation the "entruster" and Lowe Motor Company of Laurel, Inc., the "dealer (trustee", and upon the advance by the entruster of $1,155, "The trustee does hereby pledge, assign, transfer and sell to the entruster the following described chattels, to wit:", and then followed the description of the Ford. Among other provisions thereof, the trustee warranted that the security interest was a valid first lien, and that it would keep the car at its place of business in the City of Laurel for the purpose of sale or exchange in the ordinary course of trade.

Counsel for the parties have filed able and exhaustive briefs. However, by going directly to the heart of the controversy, its solution, in the final analysis, requires answers to three questions, to wit: (1) would a bona fide purchaser for value without notice, under the facts of this case, acquire a title superior to that which was attempted to be retained by the original vendor; (2) if so, does that rule extend to an encumbrancer in like circumstances; and (3) was the appellant a bona fide encumbrancer for value without notice, or did it in fact rely upon Lowe Motor Company's high credit rating as security for its loan?

It is well-settled in this State that one, who sells a chattel to a dealer with notice, actual or implied, that it will be resold, even though he retains title thereto until the purchase price has been fully paid, cannot prevail against a purchaser in due course from such dealer for value and without notice of the retained title. Columbus Buggy Company v. Turley & Parker, 73 Miss. 529, 19 So. 232; Parry Mfg. Company v. Lowenberg, 88 Miss. 532, 41 So. 65; Garrett v. Hunter, et al., 48 So. 2d 871 (Miss.). The rationale of the principle is both waiver and estoppel. See also 46 Am. Jur., Sales, Sec.

463, pp. 626-7-8. Of course this is but an application of the equitable doctrine that, where one of two equally innocent persons must suffer, the one whose act enabled the wrongdoer to commit the wrong must suffer the loss.

The above principle is well-recognized in the State of Alabama. Sec. 29, Title 57, Code of Alabama 1940, provides: "Subject to the provisions of this chapter, where goods are sold by a person who is not the owner thereof, and who does not sell them under the authority or with the consent of the owner, the buyer acquires no better title to the goods than the seller had *unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell.*" (Emphasis supplied.) Thus the owner can, by his conduct, preclude himself from denying the seller's authority to sell.

In J. L. McClure Motor Company v. McClain, 42 So. 2d 266, an Alabama case, McClain sold his automobile to Harris, giving a bill of sale and taking a check in payment of the purchase price. Subsequently the check was dishonored. But in the meantime, Harris sold the car to the motor company, a dealer. In a suit by McClain to obtain possession of the automobile from the motor company, it was held that McClain, by reason of surrendering possession of the automobile to Harris and clothing him with indicia of title, was estopped from denying the validity of the title of the motor company, a bona fide purchaser for value from Harris. The court construed and distinguished two prior cases, Barksdale v. Banks, 206 Ala. 569, 90 So. 913, and Moore v. Long, 250 Ala. 47, 33 So. 2d 6, especially pointing out that the doctrine in the Barksdale case was applicable "only in the absence of laches, waiver, or estoppel on the part of the original vendor." The opinion cited five Alabama cases as well as Williston on Sales, Sec. 316, and 46 Am. Jur., Sales, Sec. 463.

Thus there seems to be no substantial difference between the Alabama rule, based on its statutes and court

decisions, supra, and the rule in this State, as shown by the citations, supra, and the rule in 78 C. J. S., Sales, Sec. 595 c., pp. 342-3, as follows: ''Authority either express or implied given by the seller to the buyer to resell the property operates as an estoppel to claim title or as a waiver of reservation of title to the goods sold as against bona fide purchasers of the property, since the sale by the original buyer is the precise object to be accomplished under the agreement.''

Plunkett delivered physical possession of the automobile to Hobson, knowing that he was a dealer, and gave him a bill of sale, which expressly stated that the automobile was bought for resale. Instead of demanding cash, or its equivalent, before delivery, he took instead a draft, well knowing that it would have to be subsequently presented and accepted before cash could be realized, and also well knowing that payment could be refused. He could have prevented the chain of events which he thereby set in motion; and, as against another innocent party, he must suffer the consequences of his ill-advised act and trust. In 46 Am. Jur., Sales, Sec. 447, p. 613, it is said: ''But since the intention of the parties controls, if it is apparent that the seller intended to extend credit to the purchaser, as, for example, by delivering possession of the property and accepting a bill or check payable at a future date, title passes.''

But the appellees contend that the above rule does not extend to encumbrancers. However, this Court is on record to the contrary. In Citizens Savings & Investment Company v. Hunt's Garage, 128 Miss. 535, 91 So. 133, the Garage gave McKenzie the exclusive right to sell Premier cars in a certain area, and delivered to him two automobiles which were placed in his salesroom in Meridian. The Garage knew that the cars had been purchased for resale. For the purchase price, McKenzie executed his two notes in which the title and ownership of the cars was retained in the Garage until

fully paid for. One of the cars was sold. McKenzie went through the motions of selling the other car to himself, executing a series of notes to himself with retention of title until fully paid, executing and delivering to himself a conditional sales agreement of like effect, and transferring the notes and sales contract to the Citizens Savings & Investment Company. He then went to New Orleans and delivered these documents to the assignee, and it gave its check in payment for the discount value thereof. He did not tell the Investment Company that the Garage had a claim against, or lien on, the car or that he had encumbered the car for any sum. This Court held that: ''By selling the automobile to McKenzie for the purpose of being placed in his sales room for resale, the appellee clothed McKenzie with the apparent ownership of the automobile and is estopped to deny that he was the owner thereof in fact against subsequent bona fide purchasers and incumbrancers for value.'' Columbus Buggy Company v. Turley & Parker, supra, and Parry Mfg. Company v. Lowenberg, supra, were cited. Thus the Court held that the lien of the Investment Company was superior to that of the Garage.

■■■ There was no proof that the appellant had any actual knowledge of an outstanding indebtedness against the car, or that there was a lack of good faith. On the contrary, the three essential elements of a bona fide purchase were present, namely, a valuable consideration, the absence of notice, and the presence of good faith. Mayes v. Thompson, 128 Miss. 561, 91 So. 275; 2 Pom. Eq. (4th Ed.) 745. It is common knowledge that a large majority of automobile owners purchase their cars by encumbering them for the deferred payments. This is likewise true as to dealers in procuring their merchandise. When the same elements, which are necessary to constitute a bona fide purchase of an automobile, are present at the time of placing an encumbrance on it, there is no good reason to make a distinction

between the rights of such purchaser and an encumbrancer, or to give the former a higher right than the latter. In the first instance, title passes direct, whereas in the second instance, it passes to a trustee, or is placed in trust to await the outcome of the contingency.

But the appellees also say that the loan was made because of the line of credit which Lowe Motor Company had established. The very facts wholly negative that contention. Appellant took a trust receipt. If it had been depending on the credit rating, there would have been no occasion for the trust receipt—a mere note would have sufficed. The business relations between the borrower and the lender had been satisfactory. By reason of such relations, the appellant had no occasion to doubt a provision of the trust receipt that it was obtaining a valid first lien. Moreover, Hobson did not notify it that he had not paid for the automobiles. Consequently this contention must be rejected.

In view of what has already been said, there is no necessity to consider the question of whether the bill of sale should have been recorded in this State. Where a conditional bill of sale constitutes a lien under Alabama law, it must be recorded in this State under Sec. 870, Code of 1942. See Patterson v. Universal Credit Corporation, 204 Miss. 268, 37 So. 2d 306, construing General Motors Acceptance Corporation v. Crumpton, 220 Ala. 297, 124 So. 870. When the appellees delivered their automobiles to Hobson, they placed themselves in an almost impossible situation insofar as preserving or effectuating their liens against a speedy disposition of the vehicles. Obviously the office of the Chancery Clerk of Jones County at Laurel was the proper place for recordation. But, if by some unusual method, this could have been done prior to the delivery of the automobiles at Laurel, still no constructive notice would have thereby been given to the appellant, because the encumbrance was made at Meridian, in Lauderdale County,

prior to their delivery on the yard of Lowe Motor Company in Laurel.

Due consideration has been given to all questions which have been raised. In view of what has been said above, it follows that the judgment of the lower court must be reversed and a judgment must be entered here for the appellant.

Reversed and judgment here for the appellant.

*McGehee,* C. J., and *Roberds, Hall, Arrington, Ethridge* and *Gillespie,* JJ., concur.

## ON MOTION OF APPELLEES TO CORRECT JUDGMENT

Lee, J.

On a former day of this Court, this cause was reversed and a judgment was entered for the appellant. Pursuant thereto, the judgment provided that the appellant, who had given bond and retained possession of the automobiles, should retain possession of them.

The appellees filed a motion to correct the judgment so as to limit the appellant's recovery to its actual interest in the automobiles.

That is what the judgment already means. An action of replevin is possessory only. Scarborough v. Lucas, 119 Miss. 128, 80 So. 521; Jackson v. General Motors Acceptance Corporation, 151 Miss. 890, 119 So. 808; Roberts v. International Harvester Company, 181 Miss. 440, 180 So. 747.

 The appellant has liens on the automobiles by reason of its encumbrances, and is entitled to possession of them for the purpose of enforcing those liens. They will continue to exist until the indebtedness, on account of which they arose, has been paid and satisfied. The appellant is not the outright owner of the automobiles, but must deal with them as security for the payment of its indebtedness and the satisfaction of its liens.

Roberts v. International Harvester Co., supra; Commercial Credit Company v. Spence, 185 Miss. 293, 184 So. 439; Fanning v. C. I. T. Corporation, 187 Miss. 45, 192 So. 41; Martin v. Coker, 204 Miss. 576, 37 So. 2d 772; Associates Discount Corporation v. Ruddock, 224 Miss. 533, 81 So. 2d 249.

Consequently the motion is overruled.

Overruled.

All justices concur.