# WELEBIR *v.* GILBERT
[No. 102, October Term, 1955.]

182

*Decided February 17, 1956.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Charles A. Thompson,* with whom were *Frank L. Ball, Jr.,* and *Harrington & Thompson* on the brief, for the appellant.

*C. Burnam Mace,* with whom were *McBriety & Mace* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

This appeal requires us to decide whether the appellant, a physician of Arlington, Va., who, in exchange for what proved to be a worthless check, sold his Cadillac automobile to a used car dealer in that City without delivering the certificate of title, or the appellee, who bought the Cadillac from the insolvent dealer without receiving the title certificate, must suffer the loss that the transaction necessarily inflicts on one or the other. The doctor brought suit in the Circuit Court for Dorchester County in replevin to recover the car from the buyer, a Maryland

resident, and the court, sitting without a jury, applied the familiar axiom that "where one of two equally innocent persons must suffer, he should bear the burden whose conduct has induced the loss", and found that the doctor must bear the burden. All of the transactions in the case took place in Virginia. It is plain that the law of that State must control, and the parties so agree.

Appellant contends that under the Virginia law, assignment of the title certificate is an essential prerequisite to passage of title and that transfer of possession only, without assignment of the certificate, cannot enable the transferee to pass title to another. He makes the further contention that, in any event, one who purchases an automobile from a used car dealer cannot be a *bona fide* purchaser if he fails to demand and receive the title certificate before he pays the purchase price.

The appellee, on the other hand, relies on estoppel saying that the doctor may not be heard to claim that the dealer could not pass title to a *bona fide* purchaser without notice because, with knowledge, he allowed the car to be offered for sale for a week as part of the stock in trade of a licensed automobile dealer. He says too that one who purchases a car from the stock of a licensed dealer, pays for it in full, receives a detailed receipted invoice and a temporary certificate for transfer of dealer tags, and is assured that the title certificate will be mailed to him as soon as it can be gotten from a place of safekeeping, a bank then closed, may be a *bona fide* purchaser, and that this is a matter for the trier of the facts. Appellant counters that the Virginia decisions have applied the principle of estoppel in sales of automobiles by licensed dealers only in the case of finance companies who have permitted dealers to keep mortgaged vehicles on the floor for sale as a regular course of conduct, and that the principle has not been applied and may not apply where there is a sale of an automobile owned by an individual or securing a loan due an individual.

We have examined the Virginia decisions and think that the appellant construes them too narrowly. They estab-

lish a broad principle of estoppel, and not that the conduct of an individual may not bind him as tightly as does that of a finance company. A leading case is *Boice v. Finance and Guaranty Corp.*, 127 Va. 563, 102 S. E. 591, decided in 1920. There Boice purchased a car from a licensed automobile dealer in Richmond, paid him the purchase price and took delivery. The dealer had previously given a mortgage on the automobile which was duly recorded. The loan was not paid, and the lender brought action to recover possession of the car and prevailed in the trial court. The Supreme Court of Appeals of Virginia reversed. The Court pointed out that the lender knew that the dealer was exposing and offering for sale to the general public the automobile on which it held a mortgage, and directed that judgment be entered below in favor of Boice, the purchaser. It said: "It is true that, as a rule, the seller of personal chattels cannot confer upon a purchaser any better title than he himself has, but if the owner stands by and permits a seller, who is a licensed dealer in such goods, to hold himself out to the world as owner, to treat the goods as his own, place them with other similar goods of his own in a public showroom, and offer the same indiscriminately with his own to the public, he will be estopped by his conduct from asserting his ownership against a purchaser for value without notice of his title. The constructive notice furnished by a recorded mortgage or deed of trust in such cases is not sufficient." The Court then cited a number of cases from other states and, after quoting the statement in *Levi v. Booth*, 58 Md. 305, that the bare possession of goods even by a dealer in that class of goods, does not clothe him with power to dispose of them as if he were the owner, continued the quotation from that case as follows: " 'There must * * * be some act or conduct on the part of the real owner whereby the party selling is clothed with the apparent ownership, or authority to sell, and which the real owner will not be heard to deny or question to the prejudice of an innocent third party dealing on the faith of such appearance.' " Immediately after this quotation, the Virginia Court said:

"It is unnecessary for us to pass upon the effect of *bare possession,* as the instant case, in our judgment, comes within the latter proposition stated in the above quotation." In *O'Neil v. Cheatwood,* decided at the same time as the *Boice* case, and reported in 127 Va. 96, 102 S. E. 596, an automobile dealer lacked funds to take delivery of an automobile which was shipped him from the factory and, to do so, borrowed $800.00 from an individual. A few days later a bill of sale was prepared, executed and recorded. The dealer retained possession of the automobile, which several days later he sold to one who had no actual knowledge of the bill of sale. The lower court instructed the jury that if the bill of sale was duly recorded before the purchase, then the lender must prevail. The appellate court reversed, saying: "The case is not essentially different in principle from *Boice v. Finance & Guaranty Corporation,* 102 S. E. 591, which opinion was handed down to-day, and hence the views there expressed need not be here repeated."

In *Garrett v. Rahily,* et al. (Va.), 111 S. E. 110, the general agents of an automobile company in Petersburg appointed Crawford, an automobile dealer in Norfolk, as their subagent. They sold and delivered to Crawford the car involved, knowing that he would take it to Norfolk to use as a demonstration car. Title was reserved by a duly recorded contract of sale. Crawford, who had a regular place of business for the sale of automobiles, sold the car to Garrett as a result of an advertisement, and was fully paid. Again, the appellate court reversed a decision for the lien holder and said: "Under the evidence in this case, the jury should have been instructed that, if the vendee was an innocent purchaser of the car for value and without notice, they should find in his favor, for the very elect might have been deceived into believing that Crawford, the dealer, owned it, while the wayfaring man, whether wise or unwise, would have been his easy mark." The Court then cited *O'Neil v. Cheatwood* and *Boice v. Finance & Guaranty Corporation,* both *supra.* See also *Gump Inv. Co. v. Jackson* (Va.), 128

S. E. 506; and cf. *Rudolph v. Farmers' Supply Co.* (Va.), 108 S. E. 638. Any thought that the Virginia motor vehicle registration and title statutes forbid passage of title unless their provisions are explicitly and literally complied with, or that their passage erased the effect of the prior decisions, has been dispelled by the decision in *General Credit v. Winchester, Inc.,* 196 Va. 711, 85 S. E. 2d 201, decided in 1955. The Court divided four to three on the very question of whether those statutes did or did not require absolute compliance to effect transfer of title and as to whether they had or had not made the earlier decisions out of date. The minority stated flatly in the opinion expressing their views, that the motor vehicle statutes provided "* * * the only method by which title to a motor vehicle shall be transferred to a purchaser." They then cited cases, some of which are relied on by the appellant, which contain phrases, impressive when removed from context or dicta, such as "In Virginia today, a man would not buy an automobile on the strength of possession, for the sole evidence of ownership of a motor vehicle is the registered title", which was said in *Staunton Industrial Loan v. Wilson,* 190 F. 2d 706, 709. The majority took the opposite view. The facts of the case were that General Credit had financed Winchester, Inc., an authorized Packard dealer in Alexandria, by advancing the purchase price of, and taking liens on, cars. Winchester applied to and received from the Division of Motor Vehicles a dealer's certificate of title for each car issued in its name, showing the lien. The certificate of title was held by General Credit until the lien was paid off. Winchester placed its cars on display in its showrooms for sale to the public. The car involved in the case was purchased from Winchester and paid for by cash and a trade-in. The Court said: "The purchasers received a receipted invoice showing the details of the transaction. They were not told that the title to the car was in the name of Winchester subject to the recorded lien thereon in favor of General Credit, nor did they have actual knowledge of this. The pur-

chasers were told that in a few days they would receive from the Division of Motor Vehicles a certificate of title for the car and that in the meantime the receipted invoice would serve as evidence of their title." Winchester failed to pay off the recorded lien held by General Credit. The Court said: "We agree with the trial court that under the principles laid down in *Boice v. Finance & Guaranty Corp.*, 127 Va. 563, 102 S. E. 591, 10 A. L. R. 654, the lien of General Credit was null and void as against the rights of Baker and Bermudez who were purchasers for value and without actual notice of the existing lien". The Court discussed in detail the Virginia provisions for the registration of motor vehicles and the issuance of certificates of title thereto and the recordation of liens thereon, saying that they were designed to supersede the former provisions for the recording of a bill of sale for an automobile or a chattel mortgage thereon in the local clerk's office, by requiring that such documents be registered with a central state agency, namely, the Division of Motor Vehicles, and added: "There is no suggestion in section 46-71, or elsewhere in the statutes, that they were intended to validate a lien on a dealer's stock of cars, as against an innocent purchaser, or otherwise nullify the principles laid down in the *Boice* case. The decision in that case did not turn upon the adequacy or inadequacy of constructive notice resulting from the recordation of the chattel mortgage on the car. It was based upon the principle of equitable estoppel despite the adequacy of the constructive notice to purchasers resulting from a proper recordation of the lien. The present case turns upon the same principles." The Court cited and relied on the case of *Fogle v. General Credit* (U. S. Court of App. Dist. of Col.), 122 F. 2d 45.

The *Fogle* case is persuasive not only because of the reliance on it by the Supreme Court of Appeals of Virginia but because the District of Columbia statutes are comparable to the Virginia statutes. The opinion was written by Justice Rutledge not long before he was appointed to the Supreme Court. The facts were that Georgetown Mo-

tors, Inc., a dealer in new and used cars, delivered to a lender a chattel mortgage on used automobiles in its possession. The mortgage was duly recorded and the lender received the certificates of title to the cars and retained them until after the suit was filed. Georgetown Motors, with the knowledge of the lender, displayed the cars to the general public on its showroom floor. Fogle purchased one of the cars and paid for it. Georgetown Motors became insolvent and then the battle was on between the lender and the purchaser, the artillery on one side being the motor vehicle title and recordation statutes, and on the other the principle of estoppel. The Court pointed out that estoppel is a recognized exception to the rule that one can pass no better title than he has, so that if one stands by and permits a licensed dealer of chattels to hold himself out to the world as owner and to place the goods in his showroom for sale to the general public, he may be estopped by his conduct if faced by a purchaser for value and without notice. The Court discussed the lender's argument that the sale to Fogle was void because a certificate of title was not assigned to him by Georgetown Motors at the time of the transfer, as required by the District regulations, and said that prior cases involving new cars and new car titles were in point, and that the requirements of title for used cars were similar to those for new cars, and then added: "* * * we think the fundamental purpose of the two subsections is the same, so that they should be construed consistently with reference to the effect of failure to assign and deliver the required certificate at the time of transfer. * * * "* * * The statute provides only that the "owner" shall first obtain a certificate. But it nowhere provides that he is any less the owner because he fails to do so. In our opinion, the statute does not avoid a contract otherwise valid'." To the argument that Fogle could not have been a *bona fide* purchaser without notice because he failed to receive the title certificate when he paid for the car, the opinion pointed out that where the facts are such that "prospective purchasers would be led

reasonably to believe that the mortgagor has power to sell the property, the effect in throwing the purchaser off guard and preventing investigation of the title records by him is the same as if there were actual authority to sell known to the purchaser or indicia of ownership given to him. * * * The circumstances here are of that character and had that effect. Georgetown Motors was a dealer. Its business was selling cars—and buying them. It does not appear that it had any other. The car was delivered to it with the intention that it be offered for sale, that is, that it be placed in the dealer's stock in trade to all appearances as part of it, in the dealer's regular display room, without any notice or warning that it was subject to lien held by another, though this might easily have been attached, and that it be shown to customers in the regular course of trade. It is common knowledge that dealers frequently, if not always, take care of title transfers and registrations, as well as licensing, as part of the transaction of sale, often completing these matters after receiving payment and making delivery."

The facts of the case before us clearly permit the findings which the trial court made, both on the question of estoppel and the question of the appellee being a *bona fide* purchaser without notice. The doctor answered a newspaper advertisement, and called Racine, the used car dealer in Arlington. The Virginia Code, 1950, Art. 2, Sec. 46-510, requires every dealer in new or used cars to be licensed by the Commissioner of Motor Vehicles of Virginia. It is agreed that the dealer in this case was duly licensed. On a Sunday afternoon the doctor brought his car to the used car lot, directly across the street from his own office and sold it to Racine for $4,100.00, receiving a check for $1,500.00, the balance being made up by a lien of $2,600.00 held by a bank. The title certificate was held by the bank. The doctor agreed to call the dealer on Tuesday to arrange to meet to pay off the lien. When the doctor presented the dealer's check at the bank, he was told it was no good. He called the dealer and was advised to take the check back to

the bank the next day but when he did so, the check was still not good. He called again and asked for the return of his car and was told that it had been sold. Racine's version is slightly different, being to the effect that he talked to the doctor each day, telling him that he expected to make the check good the next day. While all this was going on, the purchaser of the car, who had also been to the parking lot on Sunday and left his Lincoln continental on consignment for sale, told the dealer he would be interested in buying a Cadillac. On Wednesday, Racine called him at his home in Maryland and advised him that there was a Cadillac for sale. On Saturday afternoon, he drove to Arlington, looked at the Cadillac and agreed to purchase it. He delivered the title to his Lincoln continental and to his 1954 Ford, in which he drove to Arlington, and gave the dealer a check for the difference between the trade-in allowances for them and the purchase price. He received an invoice showing the details of the transaction, which he thought was a bill of sale, and was also given a temporary assignment of dealer's tags for private use. He asked for the title to the Cadillac and was told by the dealer that he kept his titles in a bank for safe-keeping and that since this was Saturday afternoon, he would not be able to get it out until Monday, but that he would do so then and mail it to the appellee. The testimony and the Court's finding is that the doctor's car was on the dealer's lot, plainly marked for sale, from Sunday to the following Saturday, and it is said that it was directly facing the doctor's office and was the only Cadillac on the lot. The trial court found as follows as to the actions of the doctor: "He voluntarily placed his automobile on the lot of a man who was obviously in the business of buying and selling cars. * * * Certainly by the Tuesday following the sale of the car * * * the doctor knew that he had been lied to, that Racine was not a man of his word, and that he had been 'taken' by him. * * * He must have known that his car was there for sale and he surely knew that he had not been paid what was due him. He still, how-

ever, by his action anyway, continued to trust Racine, to expect the check to be made good and the sale consummated by its payment. * * * The testimony shows that the doctor's office was directly across the street from the car lot, a distance of 50 to 60 feet. It was a matter of a few moments to walk across the street on Tuesday when he found at the bank that Racine's check was no good. He with very little trouble could have regained possession of his car. He did not then, nor has he ever, reported to the police that his car had been stolen, or that he had been swindled. Why did he not do any of these things? The only answer, or at least, it seems to me the only logical answer, is that he still trusted Racine. He had sold the car on credit (if not in the first instance, at least after Tuesday this was so), and he still expected to be paid. In this case it was the plaintiff himself who set the machinery in motion which enabled Racine to sell the car to Gilbert. Again it was the plaintiff himself who, after he found that he had been defrauded, failed to set the machinery in motion which would have made it impossible for Racine to have sold the car to Gilbert. * * * he had at least until four o'clock Saturday afternoon to take action. And it would have taken mighty little effort on his part to have found this out."

We think that the findings of these facts by the trial court bring the principle of estoppel into play under the Virginia cases and that the appellant cannot be heard to say that the dealer was unable to transfer title to the appellee.

The appellant cites a number of cases from other States to show that the appellee could not have been a *bona fide* purchaser without notice. The States do not agree on the basic question of whether title may ever, in any circumstances, be transferred without absolute compliance with the motor vehicles registration and licensing statutes. Some States take the same view as Virginia and hold that these are anti-theft statutes and do not forbid transactions which are valid and effective save for compliance with formal procedures. Others either

by statute or decision require absolute compliance, and these are the ones on which the appellant places his reliance. The questions of the ability to transfer title and whether or not the would be recipient is a *bona fide* purchaser, tend to blend into one another. See the discussion on the two lines of authorities in 136 A. L. R. 830. Appellant cites, for example, *Nelson v. Fisch* (Iowa), 39 N. W. 2d 594, where the Court was construing the law of Nebraska. Nebraska has a statute which in terms says that waiver or estoppel shall not apply in any case in which the statute has not been strictly complied with. Other cases relied on have established substantially the rule of the Nebraska statute by judicial decision, and since this case turns on Virginia law, the cases cited are not in point.

The trial court found in this case that the buyer was a *bona fide* purchaser without notice. After noting that appellee might have been more careful, he said: "* * * as is well known to anyone who buys an automobile, the way Mr. Gilbert proceeded in this case is common practice." The *Fogle* case, cited above, relied on by the appellate court of Virginia in *General Credit v. Winchester, Inc.*, also cited above, pointed out the same thing, saying that "It is common knowledge that dealers frequently, if not always, take care of title transfers and registration, as well as licensing, as part of the transaction of sale, often completing these matters after receiving payment and making delivery." In the *General Credit* case itself, the purchasers received a paper almost identical with that received by the purchaser in the case before us, that is, a receipted invoice which was to serve as evidence of title. We think that the evidence entitled the trial court to make the findings of facts and inferences of facts he did and that on those facts and inferences, the Virginia law compelled the conclusion he reached.

*Judgment affirmed, with costs.*