**BORDMAN INVESTMENT COMPANY,**
Plaintiff-Respondent,

v.

**PEOPLES BANK OF KANSAS CITY and
Robert Clauson, Defendants-Appellants,**

and

**James Watts, John Doe and Mary Roe,
Defendants.**

No. 22747.

Kansas City Court of Appeals.
Missouri.

Dec. 1, 1958.

Rehearing Denied Feb. 2, 1959.

Clyde J. Linde, Robert B. Langworthy, Billy S. Sparks, Kansas City, for appellant Peoples Bank of Kansas City.

Michael J. Drape, Kansas City, for appellant Robert Clauson.

Louis A. Reale, Geo. V. Alyward, Kansas City, David R. Clevenger, Platte City, for respondent.

HUNTER, Judge.

This is an action by plaintiff-respondent, Bordman Investment Company, to replevin a 1955 Chevrolet automobile worth $2,102.-50. Defendant-appellant, Peoples Bank of Kansas City, filed its answer and counter-claim seeking recovery from plaintiff of the value of the automobile. Defendant-appellant, Robert Clauson, filed his answer and a counter-claim against plaintiff for $3,000 for wrongful taking of the automobile and for its return. The trial court, hearing it as a jury waived case, found the issues generally in favor of plaintiff and against defendants on all issues including the counter-claims and awarded possession of the automobile to plaintiff.

The Bank and Clauson perfected separate appeals, which, in accordance with their stipulation, have been consolidated. This opinion will dispose of both appeals. Previously, we heard these consolidated appeals, rendered an opinion affirming the judgment of the trial court, and upon appellants' motion granted a rehearing.

According to the evidence, James Watts had been employed in the sale of automobiles in Kansas City for many years. His car sales lot, upon which he kept automobiles for sale, was located across an alley from plaintiff's place of business. Plaintiff was in the business of financing automobile purchases, and it and the earlier entities which about December 1955 "merged" and became plaintiff corporation had loaned Watts money, secured by chattel mortgage on the particular vehicle or vehicles acquired by Watts for resale. Defendant bank under a floor planning arrangement through the years also had loaned money to Watts. Both Bordman and defendant bank knew of the other's financial dealings with Watts.

On August 4, 1955, I. Bordman entered into his arrangement with Watts concerning the 1955 Chevrolet sports coupe in issue here. Watts wished to purchase that car along with some others through the Kansas City Auction Company. Bordman issued a check payable to the Kansas City Auction Company in payment of the car, with the notification that the title to the car must be attached to the check upon presentation of the check for payment. The title, so attached, was received by Bordman, and was retained and held by Bordman. On that date Watts executed a promissory note for $2,102.50 and executed a chattel mortgage covering the car and seven others purchased at the same time in favor of I. Bordman d/b/a the Bordman Investment Company. The chattel mortgage was duly filed in the office of the Recorder of Deeds of Jackson County on August 8, 1955, and remained on file there.

This automobile previously had been titled by the State of Kansas in the name of Irene and/or Benjamin J. Bartholomew, of Topeka, Kansas. That certificate, after the mentioned auction sale to Watts, was assigned to Watts and, as stated, was delivered to and held by Bordman.

On August 22, 1955, Clauson went to Watts' car lot where he undertook to purchase the car. In accordance with the sale terms agreed upon, he traded in his old car plus $255 cash and agreed to pay the purchase price balance of $2,350. Clauson signed a blank note and chattel mortgage later filled in for the agreed total amount of $3,366 including the principal of $2,350; 3 years' insurance, $270; 3 years' life insur-

ance, $102; reserve $206; and $438 interest; payable at the rate of $93.50 per month for 36 months. Watts sold this note and securing chattel mortgage to defendant bank.

Clauson was told by Watts that the title certificate to the car was not immediately available and that Watts would give it to him soon. He asked Watts for it on numerous later occasions and each time he was again promised it but never given it. He made four payments, and the car was taken from him by plaintiff on February 6, 1956.

■ It is the accepted rule, as defendants contend, that plaintiff must stand on the strength of its own title in this replevin action and cannot recover on the weakness of defendants' title. Foulke v. McIntosh, Mo.App., 214 S.W.2d 735, Universal C. I. T. Credit Corp. v. Griffith Motor Co., Mo.App., 243 S.W.2d 814. Defendants claim there is no satisfactory showing that plaintiff corporation was the owner of the note and chattel mortgage, and thus plaintiff lacks sufficient title and interest in the automobile to succeed herein. The note and mortgage in question were made to I. Bordman d/b/a Bordman Investment Company, whereas this suit was brought by Bordman Investment Company, a corporation. This corporation did not come into existence until after the note and chattel mortgage were executed. Hence, defendants' contention that it is not shown that plaintiff corporation owned the note and mortgage.

There was evidence that Bordman Investment Company "merged" with Bordman Investment Company, a corporation. The note in question was in evidence with its endorsements including that of Bordman Investment Company. The note and chattel mortgage were in the possession of plaintiff at the trial. See, Section 401.030 RSMo 1949, V.A.M.S.; C. I. T. Corp. v. Straub, Mo.App., 11 S.W.2d 759; Butler v. Kopplin, Mo.App., 253 S.W.2d 514. It is conceded that the chattel mortgage offered in evidence was given to cover the Chevrolet automobile involved in this replevin action. It is also undisputed that Watts was the owner of the car when he executed the note and chattel mortgage. The judgment of the trial court impliedly found that plaintiff was the owner of the note and mortgage at the time this suit was filed. We agree that there is ample evidence to that effect, and our finding is in accordance with that evidence.

■ The principal fact dispute at the trial was whether Bordman had authorized Watts to actually sell the car and then bring the purchase money to Bordman who then would have the title assigned to the purchaser, or whether Watts was authorized by Bordman only at most to find a prospective purchaser for the car, pay off the note on that car, receive the title certificate, and thereafter complete the sale.

The only witness on this issue on behalf of plaintiff was its general manager, Mr. Goldberg. Defendants assert his testimony shows Bordman did authorize Watts to sell the car, then bring the purchase money to it, and obtain the title certificate. We have carefully reviewed all of Goldberg's testimony which is lengthy. A few of his statements on the subject possibly appear to favor defendants' view. Yet a fair reading of all his testimony clearly indicates it is his statement that although Bordman knew the particular car was on Watts' lot for the purpose of eventually selling it, Bordman was not "floor planning" Watts. Rather, when Watts brought Bordman the money owed Bordman for a particular car's purchase, Bordman would then make the title certificate available for assignment to the prospective purchaser. Bordman did not authorize Watts to actually sell the car prior to payment of the particular note and the obtaining of the title document from Bordman. Goldberg knew of no instance in which Watts had sold a car before paying off the applicable note and obtaining the title certificate.

To support their view of the controversy, defendants offered in evidence, over objection, a deposition of Watts taken in another lawsuit in which Bordman and Watts were parties involving other transactions and other automobiles. In that deposition Watts stated that he had been authorized by Bordman to first sell a car and then bring the purchase money to Bordman and

obtain from Bordman the title paper and note. The trial judge overruled the objections to the admission of the deposition and received it in evidence subject to any objection made as to any particular question and answer contained in it. Upon objection being made to Watts' statements that he was authorized to first sell a car then bring the purchase money to Bordman and obtain the title paper and note the trial judge sustained the objection and did not admit those answers in evidence.

We find it unnecessary to determine the correctness of the trial judge's rulings on this subject. The trial judge found generally for plaintiff which includes his finding favorably to plaintiff on all factual issues necessary to his judgment for plaintiff. Further, when we consider anew all of the evidence, as is our duty on this appeal, and reflect on the fact that Goldberg took the stand in this case and withstood vigorous cross-examination, while Watts refrained from testifying in this case because "it might incriminate him" and in lieu of such testimony defendants rely on a deposition taken in another case, not involving this particular transaction, we resolve the conflict of testimony and credibility question by accepting plaintiff's version of it as stated by Goldberg. Thus, having assumed, but not having decided, that the Watts' deposition and mentioned answers contained therein, are admissible, plaintiff prevails in its contention that Watts was not authorized by Bordman to sell the automobile and receive the purchase money before paying off the note to Bordman and obtaining the title paper from Bordman. This finding is in general accordance with the provision in the chattel mortgage given Bordman by Watts that "said mortgagor * * * will not attempt to sell (the car) * * * without the written consent of the mortgagee * * *."

The note and mortgage were valid and binding as between Bordman and Watts, the consideration being the purchase money furnished by Bordman. The certificate of title to the car is in evidence, and its authenticity is unquestioned. It discloses that Irene and Benjamin Bartholomew, of Topeka, were the owners of the car and that the certificate of title was duly assigned to Watts subject to a chattel mortgage lien of $2102.50 in favor of Bordman Investment Company.

This was an out-state registered car. The only evidence of title that Watts received, or had, was the Kansas certificate. Its transfer to Watts constituted a substantial compliance with the terms of Section 301.200 RSMo 1949, V.A.M.S. Watts had good title to the automobile and it was lawful for Watts to mortgage same to Bordman. On the executed transfer of the note and mortgage to plaintiff ordinarily they would support a replevin action by plaintiff as against Watts.

Yet, defendants further contend that as to them the chattel mortgage is void or that in any event plaintiff is estopped to rely upon it because Bordman permitted Watts, a car dealer, to retain possession of the car and authorized Watts to sell the car notwithstanding the chattel mortgage and thereafter to use the purchase money to pay off plaintiff's note, citing Section 428.-010 RSMo 1949, V.A.M.S., and such cases as Morris Plan Co. v. Universal Credit Co., Mo.App., 237 Mo.App. 365, 168 S.W. 2d 136; Citizens' Trust Co. v. Elders, 212 Mo.App. 589, 259 S.W. 136; and Embree v. Roney, 152 Mo.App. 257, 133 S.W. 83. We proceed to discuss the authorities on the subject.

In almost all jurisdictions the recognized rule is that where a mortgagee of an automobile or other chattel knows the mortgagor is a dealer, buying to sell the automobile or other chattel in the regular course of business, and consents to its sale by the mortgagor, the purchaser takes free from the mortgagee's lien. Annotation, 136 A.L.R. 821; Bordman Investment Company v. Field, 182 Kan. 344, 320 P.2d 862; Associates Discount Corp. v. Hardesty, 74 App.D.C. 44, 122 F.2d 18; Fogle v. General Credit, 74 App.D.C. 208, 122 F.2d 45, 136 A.L.R. 814; Heaston v. Martinez, 3 Utah 2d 259, 282 P.2d 833; Al's Auto Sales v. Moskowitz, 203 Okl. 611, 224 P. 2d 588; Cunningham v. G. F. C. Corp., 35 Tenn.App. 237, 244 S.W.2d 181; General Credit, Inc., v. Winchester, Inc., 196 Va. 711, 85 S.E.2d 201; Associates Discount

Corp. v. Slayton, 226 Miss. 778, 85 So.2d 199, 86 So.2d 509. Cf. Morris Plan Co. v. Universal Credit Co., supra; Osborn v. Standard Security Co., Mo.App., 222 Mo. App. 1186, 4 S.W.2d 503 (new car); Stockyards National Bank of South Omaha v. B. Harris Wool Co., 316 Mo. 426, 289 S.W. 623; Moffett Bros. & Andrews Commission Co. v. Kent, Mo., 5 S.W.2d 395; Section 428.010 (Note page 7) V.A.M.S.

However, this rule and defendants' supporting citations are not applicable in the instant case because, as we view the facts, Bordman did not actually or impliedly authorize Watts to sell the vehicle before paying off the note and obtaining the title certificate. All Watts was authorized to do was to find a prospective purchaser, i.e., someone ready and willing to buy the car, but Watts was not authorized to sell the car until the Bordman note was paid. After the note was paid Bordman had no further interest in the matter and would give possession of the title certificate. This was the essence of Goldberg's testimony.

Thus, the question actually presented is whether a recorded chattel mortgage given by an automobile dealer to a finance company, who retained possession of the certificate of title but who left the car in the dealer's possession with authority to offer it for sale in the regular course of business but not to complete a sale until the mortgage lien should be satisfied, is valid as against a purchaser for value having no actual knowledge of the mortgage, and against that purchaser's mortgagee.

■ The general rule as to chattels is that the constructive notice to the world ordinarily obtained by the recording of a chattel mortgage is not afforded by such recording where the mortgagee places or permits the chattel to be placed or to remain in the hands of a dealer engaged in the sale of goods the same as or similar to that of the chattel sold or mortgaged, with authority to display it with such goods for such mortgagee is deemed to be estopped to claim the benefit of the recording statute. In other jurisdictions this general rule is applied to sales of automobiles as well as to sales of any other kind of chattel. Annotation, 136 A.L.R. 821 ff.;

Fogle v. General Credit, Inc., supra; Al's Auto Sales v. Moskowitz, supra; Owen v. Miller, 190 Okl. 205, 122 P.2d 140; Welebir v. Gilbert, 209 Md. 181, 120 A.2d 575; Redden v. Haley, Okl., 268 P.2d 270; Associates Discount Corporation v. Slayton, supra; Boice v. Finance & Guaranty Corp., 127 Va. 563, 102 S.E. 591, 10 A.L.R. 654; 46 Am.Jur., Sales, Sec. 463, Pages 626–29. In such situations, as between an owner or mortgagee who entrusts the chattel to another for purposes other than a complete sale and the one who buys the chattel from the latter without notice of the seller's lack of authority to sell, the courts have evolved the estoppel theory based on the maxim that, as between two innocent victims of fraud, the one who makes possible the fraud on the other should suffer. It is felt that under such circumstances a purchaser in good faith of a motor vehicle from the stock in trade of a recognized dealer is not bound to investigate the dealer's title in anticipation of the unknown claims of a mortgagee or seller of such vehicle who should be aware of the danger of the buying public being misled and has made the situation possible by permitting the dealer to have the automobile in his stock in trade.

■ In deciding the question of the applicability of the mentioned rule to the sale of titled motor vehicles in Missouri particular regard must be given to our statutory provisions on the subject. Sec. 301.-210, subd. 4, RSMo 1949, V.A.M.S., provides: "It shall be unlawful for any person to buy or sell in this state any motor vehicle or trailer registered under the laws of this state, unless at the time of the delivery thereof, there shall pass between the parties such certificate of ownership with an assignment thereof, as herein provided, and the sale of any motor vehicle or trailer registered under the laws of this state, without the assignment of such certificate of ownership, shall be fraudulent and void." The provisions of Section 301.-210 have been held applicable to cars titled out-state and brought into Missouri there to be sold. Lebcowitz v. Simms, Mo.App., 300 S.W.2d 827; Craig v. Rueseler Motor Co., Mo.App., 159 S.W.2d 374. Thus, although Watts had title before he could legally transfer his ownership he was re-

quired to endorse and deliver the required certificate of title to the purchaser. G.F.C. Corporation v. Nesser, Mo.Sup., 273 S.W. 2d 264, 269; Lebcowitz v. Simms, supra.

■ The provisions of the statute that the sale of any motor vehicle which has been registered under the laws of this state without the assignment of the certificate of ownership shall be fraudulent and void is absolute, mandatory and both rigidly and technically enforced. See, Kelso v. Kelso, Mo.Sup., 306 S.W.2d 534; Allstate Ins. Co. v. Hartford Accident & Indemnity Co., Mo.App., 311 S.W.2d 41; Universal C.I.T. Credit Corp. v. Griffith Motor Co., Mo.App., 243 S.W. 2d 814; Wills v. Shepherd, Mo.App., 231 S.W.2d 843. Not only is the sale void but under the statute's terms *both* the seller and purchaser are guilty of the commission of a misdemeanor. See, Personal Finance Co. of Missouri v. Lewis Investment Co., Mo.App., 138 S.W.2d 655; State v. Clemmons, Mo.App., 283 S.W.2d 919. And it has been held that under such circumstances not even an insurable interest in the motor vehicle passes to the purchaser. Pearl v. Interstate Securities Co., 357 Mo. 160, 206 S.W.2d 975, 979; Kelso v. Kelso, Mo.Sup., 306 S.W.2d 534, 538; Mackie and Williams Food Stores v. Anchor Casualty Co., 8 Cir., 216 F.2d 317. Illustrative of its mandatory provisions concerning title transfers is Albright v. Uhlig, Mo.App., 315 S.W.2d 471, 474. There, in an action in replevin for an automobile, the St. Louis Court of Appeals held that where the plaintiff placed the automobile in the hands of a dealer, *but retained the certificate of ownership* and did not authorize the dealer to sell the automobile or receive money for it, plaintiff had the right of possession as against defendant who received it from the dealer for purchase money paid but who did not receive the assignment of the certificate of ownership. That court stressed the absolute necessity under the statute of the purchaser obtaining the certificate of ownership at the time of sale and stated, "Purchaser Uhlig would not have lost his money had he observed the requirements of § 301.210 (4) RSMo 1949, V.A.M.S. and demanded delivery to him of a duly assigned certificate of ownership at the time he took delivery of the car, and before he paid out his money. Payment of the purchase price without first obtaining an assignment of the certificate of ownership was a payment made at his peril."

In Fowler v. Golden, 240 Mo.App. 627, 212 S.W.2d 93, 95, involving an attempted sale of a used automobile without the assignment and delivery of the certificate of ownership the court stated: "According to plaintiffs' testimony * * * they did not authorize any complete sale of the automobile; and we cannot hold that they clothed Gordon with implied authority to make an *unlawful* contract, and did not know until long afterward that he had done so. * * * *Plaintiffs had retained the certificate of ownership and, if defendant had observed the law,* he would not have lost his money, because he would have demanded delivery to him of the certificate of ownership before paying."

Here we have an automobile for which a certificate of title has been issued, and which has been properly endorsed to Watts, a dealer. Thereby Watts obtained title, but, before he could legally transfer his ownership he was required to comply with the mentioned statutory provisions requiring endorsement and delivery of a proper certificate of title to the vendee. This he did not do and could not do, for plaintiff to protect itself had retained possession of the existing certificate. Thus, title to the automobile did not move from Watts to Clauson but remained in Watts. Clauson had not acquired title and therefore could not execute a valid mortgage on the vehicle.

Defendants cited authorities supporting the rule recognized in many jurisdictions concerning estoppel where the mortgagee permits the dealer to have possession of the car and place it in stock with other cars offered for sale are neither applicable nor persuasive, for in none of those jurisdictions is there present a statute making the attempted transfer or sale of a titled automobile void, and making both the buyer and seller guilty of the commission of a misdemeanor if such transaction occurs without the proper assignment of the title

document. This Missouri statute gives constructive notice to both the buyer and seller of the requirement that a proper title certificate must be endorsed and delivered at the time of the sales transaction in order for title to pass from the buyer to the seller. It is also constructive notice to both the buyer and seller that violation thereof is a misdemeanor.

■ It is our view plaintiff is not estopped to rely on the provisions of Sections 301.200 and 301.210 RSMo 1949, V.A.M.S., and its recorded chattel mortgage because Bordman left the automobile in question with Watts, a car dealer, in his stock in trade to be exhibited under the described circumstances. Our Motor Vehicle Registration Act (Chapter 301) with its civil and criminal aspects was enacted in the wisdom of our legislature as a police measure. If the statute is to be obeyed, estoppel should not be used to aid those who are guilty of its violation. Thus, courts should not lessen the statute's effectiveness by permitting a violator of its plain terms to successfully raise estoppel against a financing entity who did not authorize the questioned sale and who in reliance upon the statute has retained possession of the title certificate and duly filed a mortgage to prevent the public from being misled as to any right to sell on the part of the car dealer.

Bordman did all that needed to be done to protect the law abiding public from being injured. Bordman obtained and filed a chattel mortgage in order to give constructive notice to all the world, including these defendants, of his rights and his lien. Bordman retained possession of and held the certificate of title so that Watts could not comply with the mandatory provisions of Section 301.210 and thus could not pass legal title to a purchaser. Also Bordman made it impossible for Watts to produce the certificate of title and show it to Clauson as an indicia of ownership.

What we have said answers the contentions of both Clauson and his mortgagee, Peoples Bank of Kansas City, and makes it unnecessary for us to consider the effect of that bank's frank admission that it knew Bordman was financing Watts' purchases of cars and was taking chattel mortgages thereon.

Before arriving at our stated conclusions we examined all of defendants' citations contained in their printed briefs, and in their typewritten briefs in support of their granted request for rehearing, and gave them our full consideration. For the reasons stated, the judgment of the trial court is correct and is affirmed. It is so ordered.

All concur.

On Motion for Rehearing.

PER CURIAM.

On their motion for rehearing or transfer, appellants stress a recent Kansas decision, Bordman Investment Co. v. Field, 182 Kan. 344, 320 P.2d 862. As mentioned in that opinion Kansas does have a statute similar to our Statute, Section 301.210 RSMo 1949, V.A.M.S.

The Kansas decision is readily distinguishable, for that case was submitted to the jury with issues of (1) payment in full of the secured debt; and (2) actual authority from plaintiff to first sell the automobile and deliver possession thereof to the purchaser and then to pay off the secured note. Further, the jury was instructed that the automobile there in question "was a new unused automobile and no certificate of title had been issued thereon in any state."

In the instant decision, as we view the facts, plaintiff did not authorize the sale of the "used" (previously sold to the Bartholomews) automobile *prior* to the payment of the note thereon. Nor is there any claim of payment of plaintiff's note secured by its chattel mortgage, which, of course, would be a complete defense to the possessory action.

■ Our legislature, in its wisdom, has placed the sales of used automobiles in a class of its own, with different requirements from those concerning the sales of other chattels. The courts, and the public alike, must recognize and be bound by the action of the legislature, and its effect on the rights of sellers, purchasers and mortgagees of such automobiles.

Our Statute, Section 301.200, subd. 2, RSMo 1949, V.A.M.S. authorizes dealers in

new cars to sell new cars and give the purchaser a bill of sale which the purchaser can use to obtain a certificate of title. Thus, a mortgagee, such as Bordman, would not be in possession of *the instrument* necessary to a valid transfer of title to a *new* car, and the new car dealer would be able to give a purchaser a bill of sale apparently sufficient for the purchaser to secure a title certificate. In such event, different considerations would obtain as to the right of a mortgagee to prevail over a purchaser of a new car from the new car dealer. However, that case is not before us, and we do not pass on it. Nor can appellants rely upon those considerations as controlling in the instant case.

The motion for rehearing or transfer is overruled.